1  Daniel V. Biddulph
   Ferguson Law Office, PLLC
2  PO Box 8359
   Missoula, MT 59807
3  406-532-2664
   FAX: 406-532-2663
4  dan@fergusonlawmt.com

5

6           UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA

7                                  BUTTE DIVISION

8  KEVIN BRIGGS,                          Case No.: 18-0010-BU-KLD

9              Plaintiff,

10                                              PLAINTIFF'S STATEMENT OF
   vs.                                     UNDISPUTED FACTS IN SUPPORT OF
11                                               SUMMARY JUDGMENT

12 GALLATIN COUNTY SHERIFF
   OFFICE AND GALLATIN COUNTY
13 DETENTION CENTER; BRIAN
   GOOTKIN, SHERIFF IN HIS
14 OFFICIAL CAPACITY; LIEUTENANT
   JASON JARRETT AS AN
15 INDIVIDUAL AND IN HIS OFFICIAL
   CAPACITY AS JAIL
16 ADMINISTRATOR; SERGEANT
   NICHOLAS WALISOR AS AN
17 INDIVIDUAL AND IN HIS OFFICIAL
   CAPACITY AS DETENTION
18 OFFICER; CORPORAL DAVID
   LAUCHNOR AS AN INDIVIDUAL
19 AND IN HIS OFFICIAL CAPACITY
   AS DETENTION OFFICER; JOHN
20 DOE(S) 1-8 AS INDIVIDUALS AND
   IN THEIR OFFICIAL CAPACITTY AS
21 DETENTION OFFICERS

22 ,
             Defendant
23

24

25

26

27

28

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In support of his Motion for Summary Judgment and Brief in Support, Plaintiff submits this statement of undisputed facts:

1. On February 1, 2014, the Plaintiff, Mr. Kevin Briggs (hereinafter Briggs), was arrested by the Bozeman City Police. (Complaint, ¶ 13; Answer, ¶ 10). Following his arrest, Briggs escaped from the Bozeman City Police Station, fled Montana, and was later arrested in Oregon. *Id.*

2. Briggs was extradited to Montana and ultimately placed in custody at the Galatian County Detention Center (hereinafter GCDC) on March 10, 2014.  Briggs remained at the GCDC awaiting trial on cause number DC-14-71, Montana Eighteenth Judicial District Court, Gallatin County. (Complaint, ¶ 16, ¶20; answer ¶ 12, ¶ 16). Briggs case received significant attention in the media. Prior to Briggs arrival at GCDC, jail staff were notified he had several threats on his life due in part to the high-profile status of the case. (Exhibit A, *Deposition Jason Jarrett,* 30:10 – 31:18, *hereinafter Jarrett*; Exhibit F, Deposition Exhibits, Depo. Ex. 8, *hereinafter Depo. Ex.*).

3. When he arrived at GCDC, Briggs was placed in Administrative Segregation. (Complaint, ¶ 17; Answer ¶ 13).  In April of 2014 and May of 2014, Briggs attempted suicide. (Complaint, ¶ 17, ¶18; Answer, ¶ 13, ¶14).

4. In July of 2014, Briggs was assaulted by another inmate. Jail staff did not discover the identity of Briggs assailant.  (*Jarrett,* 36:6 – 37:8*;* Depo. Ex. 19, November assault).

5. In November of 2014, GCDC staff received an inmate report that Briggs was being threatened by other inmates. (*Jarrett,* 42:9-43:23, Depo. Exhibit 18, Briggs threat).

6. In February of 2015 Briggs was assaulted twice by another inmate, Tommy Steele (hereinafter Steele). Neither incident was witnessed by GCDC staff, but they were

captured on surveillance video. (Exhibits I & J)(Feb 8, 2015 at time stamp 00:33 via VLC media player, 06:50:30 on surveillance time stamp)(Feb. 11, 2015 at time stamp 1:10 via VLC media player, 20:03:40 on surveillance time stamp)(Exhibit B, *Deposition of Officer Nick Waliser*, 11:18 – 12:23; *hereinafter Waliser*). The two assaults occurred on February 8, 2015 and February 11, 2015. (Depo. Ex. 6, Feb. Rule Infraction Notice). Briggs volunteered to Officer Nicholas Waliser the dates and times of the assaults so that Waliser could review the video evidence. (*Waliser*, 12:1 – 23).

7.  Prior to issuing a Disciplinary Offense report, Waliser reviewed the surveillance video from February 8th and February 11th and wrote in his Report, "Steele did punch Briggs with a closed right fist once in the face," and "Briggs did not assault Steele in any way." (Depo. Ex. 6, Fuchs witness Feb Rule Infraction Notice). Waliser charged Briggs with two counts of Fighting/Physical Force. *Id.* Waliser based the fighting charges on his opinion that video evidence showing a verbal fight between Briggs and Steele. (Depo. Ex. 6, Fuchs Notice). The video does not contain audio; however, Waliser opined Briggs continually challenged, taunted, harassed or incited a fight with Steele with his words. (*Waliser*, 23:19-24:17)(*Waliser*, 17:18 – 18:15).

8.  Waliser questioned Steele about the incidents and Steele denied striking Briggs, despite the video evidence to the contrary. (*Waliser*, 26:5 – 27:18). Steele then told Waliser, Briggs was "taunting him and kind of getting at him;" however, Wailser did not speak with Briggs or any other inmates to see if Briggs was taunting Steele. *Id.*

9.  Waliser had not witnessed Briggs pick a fight with Steele or any other inmate in the past; however, Waliser believed Steele, "was not a model inmate . . . who had issues where he didn't necessarily like a lot of people or like staff." (*Waliser*, 24:18 – 25:13). Waliser

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT - 3

believed Steele was volatile and lacked self-control. (*Waliser*, 25:19 – 26:4; 29:22 –

30:3). Also, Steele made threats toward the jail on recorded phone calls. (*Waliser*, 28:7 –

29:21).

10. Waliser also wrote up Briggs for throwing food at Steele on February 20, 2015. (Depo

Ex. 6, Fuchs witness Feb Rule Infraction Notice). GCDC staff did not witness the food-

throwing incident and no inmate complained. (*Waliser*, 21:15 – 23:21).  Waliser only

discovered the food-throwing incident after reviewing the 12 days of video after the dates

identified by Briggs. *Id.* Waliser opined the incident could have resulted in another fight.

(Depo. Ex. 6). The Feb. 20th incident did not result in another fight. (Exhibit L, Video

February 22, 2015).

11. On February 22, 2015 Briggs was served with a Major Rule Infraction Report and was

informed he would have a disciplinary hearing on Feb. 26, 2015. (Depo Ex. 6, Fuchs

witness Feb Rule Infraction Notice). Attached to the Rule Infraction Report was a

Disciplinary Offense Report. Briggs signed acknowledgment of service on both forms

and wrote at the bottom of the Disciplinary Offense Report, in a space marked "Inmate

Witnesses," the name of Michael Fuchs. An inmate Briggs wished to testify on his

behalf. (Depo. Ex. 6)(Plaintiff's Response to Interrogatory No. 11., p.22)(*Waliser*, 35:12-

18; 45:19-48:16).

12. A copy of the Major Rule Infraction Report was left with Briggs, and a copy of the

signed report with Mr. Fuchs name was returned to the disciplinary team and placed in

Briggs file. (*Waliser*, 35:12-18; 45:19-48:16)(Exhibit C, *Deposition of Brett Slyngstad*, 104:9 – 105:14; *hereinafter Slyngstad*)[1].

13. Briggs Disciplinary hearing was conducted on February 26th 2015. Detention Officers Brian Taylor and Brett Slyngstad were on the Disciplinary team. At the hearing Briggs was not allowed to call witnesses and the Disciplinary Team did not interview Briggs' witness Michael Fuchs. (*Slyngstad*, 46:16-47:4)(Exhibit E, *Deposition of Brian Taylor*, 24:20 – 25:5; *hereinafter Taylor*). No reason was given as to why Fuchs was not interviewed or allowed to provide testimony, and Fuchs did not meet the criteria for refusing witness testimony in the GCDC policy manual. (*Slyngstad*, 105:15 – 109:11). Slyngstad thinks the reason for denying Fuchs may have been because he would only provide character testimony; however, no one spoke with Fuchs to verify the nature of his testimony. (*Slyngstad*, 107:3 – 10). As a person present at the time of the altercation, Fuchs testimony would have been material since the video contained no audio and the basis for Briggs' charge and conviction was a verbal fight. (*Slyngstad*, 108:12-18).

14. At his hearing, Briggs explained to the Disciplinary Team the circumstances of the Feb. 8th assault. Briggs explained, he made a request of Steele to stop sweeping dust into the day room. Steele yelled at Briggs, calling him names such as, "rapo" and "pussy," and attempted to get Briggs to enter his cell to fight him. (Plaintiff's Response to Interrogatory No. 8). Steele continued to taunt Briggs, and Briggs refused. *Id.* On February 11th, Briggs asked Steele to stop missing the air with a cleaning product. Briggs

_____

[1] Officer Brian Taylor, a member of the disciplinary team, acknowledges Briggs asked for witnesses at his February 2015 hearing, including Michael Fuchs; however, Officer Taylor believes Briggs was required to submit his witnesses on a separate sheet of paper. (*Taylor*, 17:3-22; 22:1-23:16; 24:20 – 25:5).

was on the phone with his Father when Steele approached Briggs and struck him several times. (Plaintiff's Response to Interrogatory No. 9).

15. At the hearing Briggs requested to review the video and was told the video showed him hitting Steele and if he continued to make the request he would be written up. (Exhibit H, Plaintiff Resp. to Int. No. 8). Briggs also asked to have Fuchs provide testimony and was told it was unnecessary since the video showed Briggs punch Steele. (Ex. H, Plaintiff Resp. to Int. No. 11).

16. Briggs request to review the video was also denied since inmates are never allowed to review video as part of a disciplinary hearing. (*Slyngstad*, 63:13-23)(*Taylor*, 101:8-17)(*Waliser*, 30:17 – 31:8). The Hearing Report does not state reasons for the refusal to allow Fuchs testimony or video review. (Depo. Ex. 8, February Disciplinary Hearing Report).

17. Briggs was found guilty on one count of fighting, not-guilty on a second count of fighting, and no disciplinary action was taken for throwing food. (*Taylor*, 31:17 – 32:14)(*Slyngstad*, 57:1-58:8). The Hearing report does not indicate which incident Briggs was found guilty even though both are based on substantially similar information: allegations of a verbal altercation, based on a video with no sound, with no witness testimony, where Briggs was punched by Steele. (*Taylor*, 32:2 – 36:19) Taylor rationalized the discrepancy stating the disciplinary team was giving Briggs a break. (*Taylor*, 63:16-19).

18. The Hearing Report is void of evidence relied upon to conclude Briggs guilt. Both Discipline team officers stated the basis for convicting Briggs of fighting was the video; however, Slyngstad can only assume it was the video. (*Slyngstad*, 58:20-25) Taylor

States he also relied on Steel's hearing; however, the Hearing Report does not indicate Steele's hearing was considered in Briggs hearing and Taylor does not recall what information obtained at Steele's hearing supported Briggs conviction. (*Taylor,* 33:6-22). The Incident Report clearly states Briggs did not assault Steele; (Depo. Ex. 6, Fuchs witness Feb Rule Infraction Notice) and, the video does not contain any evidence of Briggs instigating a fight through a verbal altercation.

19. The matter itself has been reviewed and adjudicated in Findings of Fact and Conclusions of Law issued by Montana 18th Judicial District Court Judge, Michael Salvagni following a hearing on Briggs Motion to Dismiss for Lack of Speedy Trial. (See Plaintiff's Complaint Exhibit A).

20. In his findings, Judge Salvagni clearly states, no evidence supported the notion that Briggs instigated any fight; or, throwing food amounted to a major rule violation or instigation of a fight. After hearing witness testimony from Waliser and reviewing video of the incidents, Judge Salvigini concluded there was no provocation on Briggs' part prior to either assault. Furthermore, the conclusion that throwing food could have instigated a fight was not supported by the facts since it took place 10 days after the prior incidents and no fight took place. Judge Salvigini found:

   a. "¶52 . . . there does not appear to have been any provocation on the part of Briggs prior to being punched (on February 8, 2015)."

   b. "¶55 . . . prior to the (February 11, 2015) punch, Briggs was leaning casually against the wall speaking to Steele and there did not appear to be any animosity between the two men."

    c.   "¶ 57. . . Wailser described the (February 20, 2015 food throwing incident) as an assault and testified that watching this food-throwing video "was what made the decision really" for him that Briggs had instigated the three incidents in February. Considering this incident occurred ten days after the two assaults, and that no assault was committed, this conclusion is not supported by facts. Waliser acknowledged that Steele claimed 'that fucking rapo has been taunting me. . . and I hit him whop, whop whop.' He also testified that Steele had been heard making threats on telephone calls.

    d.   " ¶ 58 For these February incidents, two of which appear to be unprovoked assaults against him from which Briggs sustained injuries he was given 30 or 35 days of solitary confinement. Steele was given 30 days.

21. After his hearing, Briggs appealed the disciplinary sanction with Jail Commander Jason Jarrett. (*Jarrett*, 51:15-24; Depo. Ex. 21). Briggs submitted his appeal through the jail kiosk and never received a reply. (*Jarrett*, 51:22 – 54:15). The Jail Inmate Manual describes the appeal process. (Depo. Ex. 20, Inmate Manual). Jarrett did not reply because the language of Briggs appeal did not meet the criteria per GCDC policy, and did not address exactly what Briggs wanted to appeal. *Id.* Briggs appeal stated: "I would lie(sic) to appeal my writeup for fighting, please." (Depo. Ex. 21, Feb. Appeal).

22. Jarrett's reasoning, however, is not consistent across all cases because Briggs did receive a response to his May 8, 2015 appeal where he simply wrote: "I would like to appeal my writeups or(sic) lying and being rude." (Depo. Ex. 22; *Jarrett*, 55:2-58:5). Jarrett could not explain why one appeal met criteria deserving a response, and the other did not. *Id.*

23. Briggs served the entirety of his time in disciplinary segregation and was released at the end of March. In April of 2015 Briggs was again subject to disciplinary segregation under remarkably similar circumstances.

24. On or around April 27, 2015 Briggs was cited for fighting based on video reviewed by a detention officer. (Exhibit K, Video April 13 2015, time stamp 08:54 via VLC media player, 17:17:19 via surveillance time stamp). After discovering a bruise on Briggs face Corporal David Lauchnor reviewed video footage of Briggs pod to discover the cause of the bruise. (Exhibit D, *Deposition of David Lauchnor*, 16:21 – 17:11, *hereinafter Lauchnor*). Detention staff had previously questioned Briggs about the bruise and he told officers he caught an elbow playing basketball. (*Lauchnor,* 20:1-25) After Lauchnor did not find footage of Briggs being injured during basketball he reviewed footage of the pod and discovered an incident where Briggs was assaulted by another inmate named James Smith. (*Lauchnor*, 24:1-25).

25. On April 13th, Briggs was eating lunch in the day room when the news played a segment about Briggs' trial. (Plaint. Resp. to Int. No. 13).  Smith told Briggs to, "roll it up rapo bitch", meaning he wanted Briggs to leave the pod. *Id.* Briggs told Smith he could not, and continued to eat his lunch. Smith then charged Briggs and punched him in the eye. *Id.* Briggs retreated to his cell. *Id.* Briggs was later told by Smith and other inmates he, "better not snitch." *Id.* Any time Briggs was questioned about his injury it was in a place where other inmates could have heard his conversations with officers. *Id.* (*Lauchnor*, 25:3-26:9).

26. Lauchnor wrote up Briggs for fighting based on the video. (Depo. Ex. 3, Lauchnor April Offense Report). Lauchnor's Disciplinary Offense Report stated Briggs was eating in the

day room and Smith puffed up his chest and leaned over Briggs; Smith returned to his cell, then came back out, looked at Briggs and then charged Briggs and struck him in the left eye. (Depo. Ex. 3) The report does not state Briggs struck Smith. In the video, Briggs showed no signs of aggression, and prior to Briggs disciplinary hearing, Lauchnor sent an emails to the Disciplinary team stating, "Briggs appears to be the victim rather than the aggressor;" (*Lauchnor*, 37:1-14)(Depo. Ex. 4) and, it would be good to have Briggs' side of the story documented further. (*Lauchnor*, 38:3-21)(Depo. Ex. 5, Lauchnor email April narrative). Again, the video did not contain audio, and Lauchnor had no evidence that Briggs was verbally taunting Smith. (*Lauchnor*, 30:18 – 31:11).

27. At his hearing, Briggs was given a Miranda warning, told he was charged with fighting, and asked for a statement and plea. (Ex. H, Plaintiff Resp. to Int. No. 13). Briggs stated he did not want to offer a comment or plea until he spoke with his attorney. *Id.*

28. Officer Slyngstad was the Disciplinary Officer for Briggs' April hearing. (*Slyngstad*, 65:12 – 66:2)(*Jarrett*, 61:12 – 62:9)(Depo. Ex. 10, April Disciplinary Hearing Report). The Hearing Report generated and signed by Slyngstad does not state any evidence relied upon to determine Briggs guilt, it does not state Briggs' charges, nor does it state which rule Briggs was guilty of violating. (Depo. Ex. 10). Slyngstad testified he reviewed the video of the April incident prior to the hearing and that was the evidence relied upon to find Briggs guilty of fighting. (*Slyngstad*, 67:10 – 69:12; 70:5-25). Slyngstad also received Lauchnor's e-mails prior to the hearing which stated Briggs was a victim rather than the aggressor. (*Slyngstad*, 71:10 – 72:25). Despite reviewing the video and Lauchnor's statements, Slingstad still found Briggs guilty of fighting. *Id.*

29. Briggs filed an appeal, and Slyngstad was selected to review the video on appeal. (*Slyngstad*, 73:3 – 75:17). After review of the video, Slyngstad recommended fighting be amended to rude and disrespectful behavior, and lockdown be amended to 10 days. *Id.*(Depo. Ex. 12, email April appeal reduce violation). Slingstad testified the video, which he reviewed prior to the hearing, showed the evidence of fighting was not there. *Id.* Slyngstad could not recall what Briggs did that was rude or disrespectful to Smith. *Id.*

30. Again, Judge Salvagini reviewd the video and found Briggs did nothing to provoke or instigate Smith's attack. Judge Salvigini found:

   a.   ¶ 62. At 17:17 and 33 seconds, smith charges out of the cell at Briggs. Briggs stands up from the table and backs away. Smith punches Briggs one time in the head. Briggs has his hands raised in a defensive manner but does not strike or attempt to strike Smith. Briggs bcks away from Smith and circles the table he had ben sitting at, keeping it between himself and Smith. After Smith walks away Briggs takes his food and items and shuts himself in his cell. . . .

   b.   ¶ 63. Contrary to the testimony of Lauchnor, prior to the assault no inmates were puffing out their chests, acting aggressive, or otherwise showing signs of fighting other than Smith. Briggs turns toward Smith but maintains a general posture of hunching over his food and does not gesture or square his shoulders. The attack appears unprovoked. Lauchnor testified that "they started and stopped several times while they were interacting" but Smith appears to be the only person instigating any interactions, and continuing to engage Briggs.

   c.   ¶ 64. Also contrary to the testimony of Lauchnor, Smith did not lock down in his cell after the attack. Smith returned to his cell but left the door open, continuing to

walk around the common area and even going to the door of Briggs cell for a few moments after the attack.

31. After Briggs April Disciplinary Hearing, Officer Taylor sent out an e-mail detailing the results of the day's hearings. (*Taylor*, 63:7)(Depo. Ex. 14, email April Disciplinary Hearing results) Taylor testifies he cannot tell from the Hearing Report what Briggs was found guilty of, or what the charges were. (*Taylor*, 61:1-23).

32. Jarrett could not tell from the April Hearing Report what evidence was used to determine Briggs' guilt. (*Jarrett*, 65:8-15).  Despite these deficiencies in the Hearing Report, Taylor's e-mail deduces a detailed summary of the results of Briggs hearing. (Depo. Ex. 14, email April Disciplinary Hearing Results). After sharing a laugh over Briggs getting more time than Smith for, "Getting his ass kicked;" Taylor explains to Officer Porter that the basis for Briggs guilt was a refusal to enter a plea. (*Taylor*, pp. 70-73).

33. After Briggs was placed in Disciplinary Segregation in April of 2015, he remained in segregation until August 31 of 2015, after his trial.  (Exhibit G, Defendant Resp. to Int. No. 5) Following his placement in Disciplinary Segregation, Briggs appealed the write up and eventually it was reduced to Rude or Disrespectful Behavior. Briggs made an attempt to appeal a finding of rude or disrespectful behavior, but his appeal was denied. (Depo. Ex. 22). When Briggs was told his appeal was denied, he was informed he was re-classified to Administrative Segregation. *Id.* Briggs was told Administrative Segregation was based on his, "recent behavior." (Depo. Ex. 22, April Appeal).

34. GCDC policy states inmates may only be placed on Administrative Segregation when the inmate, "presents a serious threat to life, property, self, staff, or other inmates, or to the security or orderly operation of the facility." (Depo. Ex. 24, GCDC Policy Manual;

*Jarett*, pp. 80-82). The reason for placing an inmate on Administrative Segregation must be documented in the JMS (Jail Management System) in the form of an incident report. *Id.* Inmates placed on administrative segregation are placed in the disciplinary pod. *Id.* No incident report was entered into the JMS documenting the reason for placing Briggs on Administrative Segregation. (*Jarrett,* 80:19-22; 83:5-12).

35. Although he was classified in Administrative Segregation, Briggs remained in a segregated disciplinary cell with no clear reason given for his extended placement. In his deposition, Jarrett states Briggs was a danger to himself and the orderly operation of the facility. (*Jarrett*, 81:20-83:3) Jarrett based this determination on attempts at potential suicide; however, those attempts were nearly a year prior to Briggs classification. *Id.* Jarrett also stated self-harm was likely. *Id.* This was based on the belief that Briggs was provoking fights; and, "black eyes that we couldn't correspond to anything other than self-inflicted." *Id.*

36. Jarett's basis for disorderly operation of the facility related to a rhetorical concern that Briggs would disrupt other inmates or harm himself. (*Jarrett*, 82:11 – 83:4). The only record of the reason for Briggs' placement in Administrative Segregation that Jarrett could point to is a collection of Team Meeting notes and any prior incident reports in the system. (*Jarrett*, 83:5-12; Depo. Ex. 17, Team Meeting Notes).  The team meeting notes are the only written record of the Team Meeting discussions regarding inmate status. (*Jarrett,* 41:3 – 42:8). The only incident report filed at or near the time Briggs was placed on administrative segregation was from Lauchnor, regarding Briggs request to use the phone to call his attorney. (CCJI00258).

37. The Team Meeting Notes do not detail any reason to place Briggs on Administrative Segregation. (Depo. Ex. 17, Team Meeting Notes). The only Team Meeting notes at the time Briggs was placed on Administrative Segregation show Briggs was asking to have his charges dismissed for lack of speedy trial and some officers had been subpoenaed to testify at the hearing. (Depo. Ex. 17, Team Meeting Notes, CCJI 00301). The team notes do not reflect any ongoing behavioral issues, and even note Briggs had no incident or disciplinary reports. *Id.* (CCJI 00304-305). The team meeting notes indicate Briggs was released from Administrative Segregation after completion of his trial.

38. Slyngstad testified, he did not know why Briggs was placed in administrative segregation, beyond the reports of fighting. Current suicidal concerns were not brought up in team meetings. (*Slyngstad*, 86:6-17). Lauchnor believed Briggs was placed in administrative segregation based on his history and behavior at the jail, but did not know of any report detailing a reason. (*Lauchnor*, 45:19). Taylor did not know why Briggs was placed in administrative segregation, but believed an incident report should be entered if it was because an inmate was suicidal. (*Taylor*, 87:16; 89:3).

39. Jarett further believed Briggs instigated the February and April assaults on himself. (*Jarrett*, 86:18-25). This belief was based on video evidence and statements from other inmates. *Id.*. Jarrett could not remember or identify which inmates gave statements, but stated any statements from Smith or Steele were not reliable sources of information. (*Jarrett*, 87:20 – 88:22).

40. Jarrett testified Briggs could have been removed from administrative segregation based on a period of good behavior; however, he does not recall if any expectation was communicated to Briggs of what he could do to come off administrative segregation.

(*Jarrett*, 85:2-86:3). Briggs did have good behavior in administrative segregation. From the time of his placement in administrative segregation, Briggs had 60 days clear conduct with no incidents or writeups till July of 2015. (Exhibit G Defendant's Response to Interrogatory No. 5; Resp. to Prod. No. 3, CCJI00256, 00259). Briggs remained in administrative segregation until August 31 of 2015. *Id.*

41. During the time Briggs was in administrative segregation a hearing was held on his motion to dismiss for lack of speedy trial where detention staff were called to testify about Briggs treatment while in custody. (*Jarrett,* 89:5-90:22). After that hearing the Gallatin county attorney inquired as to why Briggs was still being held in isolation. (Depo. Ex. 25, County Attorney Email). Briggs remained in administrative segregation until August 31 of 2015. (Ex. G, Def. Resp. to Int. No. 5).

.

Dated this 3 of January, 2020,

*/s/ Daniel V. Biddulph*
Daniel V. Biddulph, Attorney for Plaintiff
Ferguson Law Office, PLLC

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2020 a copy of the foregoing document was served via court CM/ECF and mailed to the following persons, a copy in Word Document Format was forwarded to Defendants at the e-mail below:

> Calvin Stacey
> Alex Stacey
> Stacey, Funyak & Kautz
> PO Box 1139
> Billings MT 59103
> 406-259-4545
> cstacey@staceyfunyak.com
> astacey@staceyfunyak.com

By: */s/ Daniel V. Biddulph*
Daniel V. Biddulph, Esq.
Ferguson Law Office, PLLC
Counsel for Plaintiff

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT - 16