Calvin J. Stacey
STACEY & FUNYAK
100 North 27th Street
P.O. Box 1139
Billings, Montana 59103-1139
Phone: (406)259-4545
Fax: (406)259-4540
cstacey@staceyfunyak.com

*ATTORNEYS FOR DEFENDANT*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

|  |  |
|---|---|
| KEVIN BRIGGS,<br><br>          Plaintiff,<br><br>     v.<br><br>GALLATIN COUNTY and JOHN DOES 1-8, as individuals and in their official capacity as detention officers,<br><br>          Defendants. | )<br>)<br>)  CV 18-0010-BU-KLD<br>)<br>)  **DEFENDANT'S BRIEF IN**<br>)  **OPPOSITION TO PLAINTIFF'S**<br>)  **MOTION FOR SUMMARY**<br>)  **JUDGMENT AND REQUEST FOR**<br>)  **SUMMARY JUDGMENT**<br>)  **PURSUANT TO RULE 56(f)(1),**<br>)  **F.R.CIV.P**<br>)<br>)<br>) |

Defendant Gallatin County, by and through its counsel of record, respectfully submits the following in opposition to Plaintiff's Motion for Summary Judgment and additionally, pursuant to Rule 56(f)(1) of the Federal Rules of Civil Procedure requests that the Court grant summary judgment in favor of Gallatin County on all or some of the claims not subject to determination by the trial jury.

## TABLE OF CONTENTS

Standard Of Review………………………………………………...   1

Summary Of Case………………………………………………..   1

Briggs' Claims………………………………………………   2

Briggs' Placement Within The Detention Center…………………...   4

Protection Claim…………………………………………………   10

February 2015 Proceedings…………………………………....   12

February 2015 Incidents…………………………………………   14

April 2015 Incidents…………………………………………....   18

Conclusion……………………………………………………   20

## TABLE OF AUTHORITIES

**Federal Rules of Civil Procedure**

     Rule 56………………………………………………………….....    1


**Case Law Authority**

     *Mitchell v. Dupnik*, 75 F.3d 517 526-527 (9th Cir. 1996)………..    3

     *Cephas v. Truitt*, 940 F. Supp. 674, 681 (D. Del. 1996)…………    11

     *Sandin v. Connor*, 515 U.S. 472, 484 (1995) …………………….    12, 13

     *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)……………..    12

## EXHIBIT INDEX

### BRIGGS' PLACEMENT WITHIN THE DETENTION CENTER

Ex. A – CCJI 292 – Depo Ex. 17.................................................... 5
Ex. B – CCJI 223-224; 62-63......................................... 6
Ex. B – CCJI 60-61.................................................... 6
Ex. B – CCJI 44-51.................................................... 6
Ex. B – CCJI 54-55.................................................... 7
Ex. B – CCJI 294; Depo Ex. 17.......................................... 7
Ex. B -  CCJI 264-265; 294............................................. 7
Ex. B -  CCJI 232-233................................................. 7
Ex. B – CCJI 234..................................................... 7
Ex. B - CCJI 171-172; 295-296......................................... 8
Ex. B – CCJI 212..................................................... 8
Ex. B – CCJI 245-246.................................................. 8
Ex. B – CCJI 297; Depo Ex. 17.......................................... 8
Ex. B – CCJI 208..................................................... 8
Ex. B – CCJI 259-260; 256-257; 302-310.................................. 9
Ex. D. – Jarrett Depo 13-15........................................... 5
Ex. E – Lauchnor Depo 14-15........................................... 6

### FEBRUARY 2015 INCIDENTS

Ex. B - CCJI 298-299; Depo Ex. 17..................................... 14
Ex. B – CCJI 247-248................................................ 14
Ex. B – CCJI 164..................................................... 14
Ex. B – CCJI 290-291; Dep Ex. 6...................................... 15
Ex. B – CCJI 279-282; 286-288; 290-291.............................. 16
Ex. B – CCJI 289..................................................... 16
Ex. F - Waliser Depo 23-27............................................ 15

### APRIL 2015 INCIDENTS

Ex. B – CCJI 249-250................................................ 18
Ex. B – CCJI 252..................................................... 18
Ex. B - CCJI 203;263; 277-278........................................ 19
Ex. E – Lauchnor Depo 17-30.......................................... 20
Ex. G – Taylor Depo 99-100.......................................... 19, 20
Ex. H - Slyngstad Depo 78-79......................................... 19

### CONCLUSION

Ex. I – Smelko Depo 61-68............................................. 21

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, in order for Briggs to prevail on his Motion for Summary Judgment, he must establish in respect to each claim that he has made that there is no genuine dispute as to any material fact entitling him to judgment as a matter of law.  Not only does Gallatin County argue that Briggs has failed to meet this burden, Gallatin County contends that all or most of the claims of Briggs should be dismissed.  Gallatin County respectfully contends that the undisputed facts of this case establish that summary judgment in favor of Gallatin County is appropriate pursuant to Rule 56(f)(1) of the Federal Rules of Civil Procedure.  Briggs' overall claim that he has been denied due process by Gallatin County fails as a matter of law or at a minimum, issues fact remains to be decided by the trial jury.

## SUMMARY OF CASE

Plaintiff Kevin Briggs (Briggs) was charged with the crimes of Aggravated Assault, Attempted Sexual Intercourse without Consent, Assault on a Peace Officer, Escape and Failure to Register as a Sex Offender.   Following a jury trial in Gallatin County, he was convicted of a number of the charged criminal offenses.  Briggs received a total sentence of 35 years in prison in January of 2016.  From March 10, 2014 until being transferred to prison, Briggs remained at the Gallatin County Detention Center (Detention Center).

1

Immediately after arriving at the Detention Center on March 10, 2014, Briggs was involved in many different and continuing disciplinary issues involving himself as well as other inmates. Briggs attempted suicide on several different occasions as well as continually violating rules and policies of the Detention Center. Due to these and other issues, Briggs placement and classification within the Detention Center changed from time to time. Each time a change was made it was due to the conduct of Briggs. In each instance, Briggs' due process rights were recognized and protected contrary to his allegations found in his Complaint. Gallatin County respectfully contends that the undisputed facts of this case establish that Briggs' claims should be denied as a matter of law or in the alternative, those in which disputed material facts exist, the trial jury should be allowed to decide all issues and each element of each claim.

## BRIGGS' CLAIMS

Briggs has made several different claims that Gallatin County violated his due process rights. A summary of those claims is as follows:

1.      In February of 2015, Gallatin County violated his right to due process by conducting a disciplinary hearing and denying him the right to call a witness, receive a written report concerning the findings of the hearing, denying him an appeal and subjecting him to disciplinary segregation with no factual basis to do so.

2

2.      In regard to an April 2015 disciplinary hearing, Briggs contends that his due process rights were violated when he was subjected to disciplinary segregation with no evidence to support the decision, no written findings being issued and although he failed to participate in the hearing, this was improperly used against him.

3.      Briggs contends that he remained in administrative segregation at times with no legitimate or documented reasons for that occurring.

4.      Briggs contends that the Detention Center failed to protect him despite the Detention Center's knowledge of the risk of harm to him.

Gallatin County disputes each and every one of these allegations and instead, contends that the undisputed facts establish that none of Brigg's claims should be allowed to proceed forward and be decided by the trial jury.

In addition to Gallatin County's contention that no violation of due process rights occurred, Briggs has failed at a minimum to establish that any alleged breach of his due process rights caused him any damages, issues that would have to be decided by the trial jury. (See *Mitchell v. Dupnik*, 75 F.3d 517 526-527 (9th Cir. 1996)) where the Court concluded that although triable issues existed as to whether or not the plaintiff was prevented from calling witnesses and not given a statement of reasons for disciplinary decisions, the causation issues prevented the granting of the motion for summary judgment).  Any of Briggs' claims that may survive must

3

be decided by the trial jury involving whether or not his due process rights were violated causing any damages.

## BRIGGS' PLACEMENT WITHIN THE DETENTION CENTER

One of the issues that Briggs has raised by way of his Motion for Summary Judgment is that he complains that he remained in what is referred to as administrative segregation at times without a documented reason to support that placement. Gallatin County contends that there is no factual basis for this allegation and that as a matter of law, this claim should be dismissed.

Briggs, throughout his stay at the Detention Center, was moved from different parts of the Detention Center based upon documented information and more importantly, within the power and discretion of the Detention Center. His placements were based upon a number of different reasons including his own conduct. These decisions were not made lightly but instead were made by a number of trained individuals. Briggs, by way of this claim, asks this Court to second guess decisions made by the Detention Center.

In order to understand Briggs' claims, it is necessary to also understand what Briggs did, from time to time, justifying his classification and placement within the Detention Center. Defendant has identified in his Statement of Disputed Facts and Additional Facts that show the history of Briggs' incarceration at the Detention Center and why from time to time, his classification and placement within the

4

Detention Center changed.  There is no factual basis to support Briggs claim that he was improperly classified and this claim should be dismissed.

Upon arrival and being booked into the Detention Center on March 10, 2014, Briggs was placed in a booking cell so that he could be observed.  A number of reasons went into that decision including the fact that Briggs had recently escaped from the custody of the Bozeman Police Department and was an escape risk.  The Detention Center has several different classifications for inmates including general population, low security, inmate workers, medium classification, special management, administrative segregation, high security and disciplinary.  (Ex. D. – Jarrett Depo 13-15).  In making a determination on each inmate, a group of professionals including mental health counselors, registered nurses and detention officers met frequently to discuss individual inmates.  The TEAM Meeting notes in regard to Briggs outline in detail the decisions that were made in regard to how Briggs would be classified within the Detention Center.  After being held initially in the administrative segregation (holding cell) portion of the Detention Center, he was reclassified and placed in what is referred to as the D-Pod.  (Ex. A – CCJI 292 – Depo Ex. 17).  Briggs does not nor can he contend that being placed in D-Pod in any way was improper.  Instead, Briggs contends that he should have never been placed in administrative segregation despite the fact that shortly after arriving at the Detention Center in April and May of 2014, he attempted suicide on several different

5

occasions, and thereafter continually committed numerous minor and major violations of jail policies and procedures. For the benefit of him as well as others, placement decisions were made by the TEAM as well as others. In 2014 he was moved to D-Pod on March 31, 2014, just three weeks after being booked into the Detention Center. The Detention Center is a "behavior-based jail" and based upon Briggs' behavior, this as well as all other placements were made and documented. (Ex. E – Lauchnor Depo 14-15). Briggs wants the Court to second guess these decisions.

After being placed in D-Pod, Briggs decided to attempt suicide on April 18, 2014. He was returned to the booking area and placed on suicide watch. He was then returned to D-Pod but on April 26, 2014, he was found unconscious and faced down and unresponsive in his cell. Again, he was watched and monitored closely. (Ex. B – CCJI 223-224; 62-63).

On May 7, 2014, it was reported that Briggs had attempted suicide. He had cut two arteries and a vein and when that failed, he sliced his tongue open. As a result, he was removed from D-Pod, taken to the hospital where he was treated and later returned to the Detention Center and appropriately monitored. (Ex. B – CCJI 60-61). Again, the TEAM Meeting notes discussed Briggs' situation. Since Briggs was an escape risk as well as having mental health issues, he was monitored very closely. (Ex. B – CCJI 44-51).

6

On May 14, 2014, it was reported that Briggs had been "manipulative and unable, unwilling to follow rules in booking." Despite all of this, the TEAM Meeting notes continued to show that the members of the group were reviewing Briggs' status and attempting, to the best of their ability, to protect not only himself but everyone else. (Ex. B – CCJI 54-55). On May 27, 2014, it was decided to move Briggs back to the D-Pod where he stayed until many months later in February of 2015. (Ex. B – CCJI 294; Depo Ex. 17).

Shortly after being moved to D-Pod, Briggs got into trouble. On June 7, 2014, he received two major rule infractions as a result of his possessing a razor which he had been prohibited from doing so for obvious reasons. A hearing was set from June 11, 2014 in regard to the Major Rule Infraction and despite pleading not guilty, he was found guilty of having dangerous contraband in his cell and given a 30-day lockdown penalty. (Ex. B - CCJI 264-265; 294). Briggs is not contending in this case that this disciplinary proceeding violated his due process rights.

Briggs, throughout 2014, continued to have behavioral problems. (Ex. B - CCJI 232-233). In July of 2014, he was observed with a black eye but refused to explain how it had occurred. At that time, he was in D-Pod. The Detention Center staff reviewed video to see what had happened since Briggs was unwilling to explain. (Ex. B – CCJI 234).

In September of 2014, Briggs received rule infraction reports when during a search of his cell, naked female pictures were found.  Throughout this period of time, TEAM Meetings were conducted and Briggs' classification was reviewed at all times.  It was determined based upon his behavior as well as all other factors that he would not be allowed to move lower than a medium classification in what is referred to as E-Pod.  (Ex. B - CCJI 171-172; 295-296).

In November of 2014, Briggs was placed on lockdown for 23 hours for disrespect and failing to acknowledge and abide by directions from Detention Center's staff.  (Ex. B – CCJI 212).   On December 4, 2014, a search of his cell revealed that he was in possession of items in violation of the rules and once again he was placed in lockdown for 23 hours.  (Ex. B – CCJI 245-246).  Despite all of this and contrary to Briggs' claims that his due process rights were being violated by Gallatin County, TEAM Meeting notes of December 15, 2014 show that the members of the group decided to move Briggs back to D-Pod.  (Ex. B – CCJI 297; Depo Ex. 17).   Unfortunately, for Briggs, he could not control himself and a Disciplinary Offense Report dated December 31, 2014 showed that he was throwing paper wads onto the pod floor.  Once again, he received an offense report and was placed on a 23 hour lockdown as well as being required to clean up the mess that he had made.  (Ex. B – CCJI 208).

As a result of incidents that occurred in February and April of 2015 involving Briggs, Briggs was placed in administrative segregation.  In each case, valid and documented reasons for the decisions of the Detention Center are found.  In those cases, Briggs was involved in altercations with two other inmates which were felt to have been instigated by Briggs to some extent.  Additionally, Briggs was admittedly guilty of certain major rule infractions including throwing food at an inmate which happened to be the same inmate that he claimed had assaulted him without any provocation whatsoever.  As a result of these major rule infractions, Briggs was placed in administrative segregation but not to any unfair extent.

In the summer of 2015, Briggs continued to violate Detention Center rules including committing the Major Offense of making a false statement to a Detention Center Officer on July 2, 2015, repeatedly pushing the intercom button despite being warned about this on July 8, 2015 and TEAM Meeting notes beginning June 1, 2015 discussing Briggs' placement in administrative segregation detail the reason for that continued placement including the conclusion that Briggs' behavior was of concern. (Ex. B – CCJI 259-260; 256-257; 302-310).

Briggs' contention that his placement within the Detention Center throughout his stay at the Detention Center in some way violated his due process rights lacks any factual support whatsoever.  Instead, as with all of Briggs' claims in this case, they are based upon his personal opinion and not the reality of what took place from

March 10, 2014 until he left the Detention Center in January of 2016.  Therefore, it is respectfully requested that Briggs' claim that his placement in administrative segregation from time to time violated his due process rights should be rejected and summary judgment granted in favor of Gallatin County and dismissal of this claim. At a minimum, as with all of Briggs' claims, issues of material fact exist preventing the granting of summary judgment in favor of Briggs.

## PROTECTION CLAIM

Briggs contends that the Detention Center staff failed to protect him despite their knowledge of the risk of harm to him.  In support of this claim, Briggs contends that the decision to place Briggs in a medium or high security general population (D-Pod) of the Detention Center placed him at a higher risk of suffering serious harm and injury.   Gallatin County respectfully contends that this claim should be dismissed as Briggs has failed to establish any factual basis to support his contention and instead, the undisputed evidence in this case justifies each and every placement of Briggs within the Detention Center based upon all of the facts and circumstances including Briggs' own conduct.  The facts that support this position of Gallatin County are set forth in detail in Defendant's Statement of Disputed Facts and Additional Facts and have been referred to throughout this Brief.  Again, Briggs attempts to seek summary judgment on a claim that is not supported by any credible evidence other than his purely unsupported allegations.

Briggs must also establish a factual basis for the trial jury to conclude that the Detention Center violated any liberty interest that Briggs may have had including the right to be free from cruel and unusual punishment in allowing Briggs to be subjected to harm.  In order to meet that burden, Briggs must demonstrate intentional conduct or deliberate indifference in allowing him to be injured.  Briggs must establish that the Detention Center knew or should have known of a sufficiently serious danger to him, something more than a negligent failure to appreciate the risk. (*Cephas v. Truitt*, 940 F. Supp. 674, 681 (D. Del. 1996)).  Briggs has no evidence to support this claim.

In summary Gallatin County respectfully contends that there is no factual basis upon which Briggs can establish, as a matter of law, that Gallatin County violated any of his rights in regard to his claim that he was failed to be properly protected.  Instead, the evidence which is not in dispute shows very clearly that at all times, Briggs' rights were being protected and especially protecting him from not only himself but others.  The problem was that Briggs attempted to cause harm to himself through failed suicide attempts, become involved in altercations due to his own behavior and as described by Detention Center professionals, was "manipulative" all of which led to his documented problems.  There is no evidence to support this claim and it is requested that it be dismissed in its entirety.  Again, as

11

with all issues raised by Briggs, at a minimum, issues of material fact remain to be decided in regard to his claims.

## FEBRUARY 2015 PROCEEDINGS

Although the Fourteenth Amendment's Due Process Clause entitles a prisoner with certain due process protections when charged with a disciplinary violation, these protections adhere only when the disciplinary action implicates a protected liberty interest in some "unexpected matter" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (*Sandin v. Connor*, 515 U.S. 472, 484 (1995)). If the hardship is sufficiently significant, then the Court must determine whether the procedures used to deprive that liberty satisfied Due Process. Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, the court relies on a condition or combination of conditions or factors that requires case by case, fact by fact consideration. (*Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). There are three guideposts by which to frame the inquiry including (1) whether the condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody and thus comports with the prison's discretionary authority, (2) the duration of the condition and the degree of restraint imposed and (3) whether the State's action will invariably affect the duration of the prisoner's sentence (*Sandin,*

515 U.S. at 486-487). Typically, administrative segregation in and of itself does not implicate a protected liberty interest. (*Sandin*, 515 U.S. at 486).

In this case, the undisputed facts establish that the placement of Briggs in administrative segregation was due, at various times, for numerous reasons including for the protection of Briggs himself, (i.e., suicides), minor violations that consistently took place over time and major infractions in which hearings were held. In all cases, Briggs received due process.

As a result of Briggs' numerous violations of jail policies, he from time to time, was placed in administrative segregation. As a result of attempted suicides, he was watched and closely monitored. In regard to minor violations where he would be placed in lockdown for 23 hours, which is appropriate discipline within the Detention Center's discretionary authority. In all cases, Briggs was treated equally and no different than any other inmate and none of the Detention Center's actions affected the amount of time that Briggs stayed at the Detention Center. He was booked into the Detention Center on March 10, 2014 and did not get sentenced and moved to the prison until January of 2016. Nothing that took place while Briggs was incarcerated at the Detention Center affected the duration of his ultimate sentence. The conditions and degree of restraint imposed upon him was proper in all cases and therefore Gallatin County respectfully contends that Briggs, as a matter of law, has failed to adequately state a claim, supported by facts, that would establish

a deprivation of any liberty right afforded to him under the facts and circumstances of this case.  Therefore, Gallatin County respectfully requests that not only Briggs' Motion for Summary Judgment be denied in its entirety but that his Complaint be dismissed.

## FEBRUARY 2015 INCIDENTS

At the end of end of January of 2015, Briggs' attorneys representing him in his criminal case decided to no longer represent him.  (Ex. B - CCJI 298-299; Depo Ex. 17).  Shortly thereafter, Briggs was involved in several incidents in February of that year.  A Disciplinary Offense Report dated February 9, 2015 stated that Briggs had been misusing the intercom for approximately two hours and as a consequence, he was charged with a minor rule violation in lockdown for 23 hours.  (Ex. B – CCJI 247-248).   An Incident Report dated February 21, 2015 stated that Briggs was walking into his cell and standing by his door looking out towards the day room and specifically in the direction of inmate Steele.  Prior to that, a Detention Officer could hear loud voices in that area.  Steele pushed the intercom and stated that Briggs wanted Steele to enter his cell to fight.  Briggs denied making that statement.  As a result of this incident, the entire pod was placed in lockdown until the situation could be thoroughly investigated.   At that time, Briggs was cited for "Disruptive Behavior".  (Ex. B – CCJI 164).

The Detention Center received information that sometime in February of 2015, Steele and Briggs had been involved in incidents. To find out what happened, videos were viewed. It was the conclusion, based upon a review of the videos as well as all other information available concerning Briggs and his past history that he was instigating the two incidents with Steele. In fact, one video showed Briggs turning towards Steele and throwing food at him. As testified in this case, the Detention Officers could not understand why Briggs, who has claimed to be a victim in the incidents with Steele, would then throw food at him. In any event, a Disciplinary Offense Report dated February 22, 2015 detailing the events of February of 2015 involving Briggs and Steele was issued. Video evidence established that Steele and Briggs were involved in a verbal fight on February 8, 2015 as well as physical altercation. The Reports that were prepared and provided to Briggs accurately identified the information in the videos including the fact that Briggs did not physically strike Steele, however, the video evidence did show Briggs throwing food at Steele thus being rude, disrespectful and insulting, a major rule infraction that was given to Briggs along with two others for fighting. (Ex. B – CCJI 290-291; Dep Ex. 6).

Despite these incidents, Briggs refused to press charges against Steele. Steele contended that Briggs was taunting him at the times depicted in the videos. (Ex. F - Waliser Depo 23-27). The Major Rule Infraction Reports referred to the

15

written reports provided to Briggs and set a hearing date of February 26, 2015.  At

that time, Briggs was found not guilty in regard to one fighting charge, guilty on a

second fighting charge and he pled guilty to the throwing of food incident.  In regard

to the findings of guilt, he was given a 35-day lockdown sentence with credit for

time already served in lockdown.  (Ex. B – CCJI 279-282; 286-288; 290-291).

Briggs contends that his due process rights were violated for a number of

reasons.  First of all, he contends that a witness that he wished to call was not allowed

to testify.  There is no dispute that witnesses may testify at Hearings but pursuant to

the discretion of the Detention Center and the policies in effect, not every witness

may be called.  The Detention Center contends that at a minimum, Briggs failed to

provide a "list of witnesses for the hearing" which is reflected on the Major Rule

Infraction Report provided to Briggs.  (Ex. B – CCJI 289).  Briggs contends that

writing the name of his witness on a Report was sufficient to satisfy this requirement

while the Detention Center believes otherwise.  In any event, the evidence including

the video was reviewed by the members of the Hearing Board and it was not believed

that any additional information was needed.  Briggs failure to properly identify

witnesses as well as the fact that no witnesses were needed, within the discretion of

the Detention Center, the decision was made, Briggs claim in this respect should be

denied.  The Detention Center clearly has a policy that allows, under certain

circumstances, witnesses to be called which is much different than any case that may

be relied upon by Briggs in which blanket policies against calling witnesses existed. In this case, a decision was made that a witness was not needed to be called for several different reasons and at a minimum, this claim creates an issue of material fact to be decided by the trial jury.

Likewise, Briggs' claim that he should have been allowed to view the video ignores the fact that the video existed and was reviewed by the hearing panel members. This claim is not supported by any evidence and is not, as a matter of law, a denial of any due process rights.

Briggs contends that he was not provided with written reasons and an explanation for the decision of the Panel in reaching its decisions. However, this ignores the fact that the written reports relied upon by the hearing members were referred to in the Major Rule Infraction Report and provided to Briggs as well. Briggs understood the claims being made against him. Despite that knowledge Briggs disputes the conclusions of the Hearing panel members. Based upon the evidence, the decision was to find Briggs not guilty of one fighting charge, guilty of another fighting charge and of course based upon his plea of guilty was found guilty and disciplinary action was taken in regard to his admitted throwing of food which was a major rule infraction.

Briggs claims that he was not allowed to appeal the Hearing decision. The Detention Center contends that he failed to properly appeal. In regard to this issue,

at a minimum, issues of material fact remain to be decided by the trial jury as to whether or not the appeal was properly made. As with all of Briggs' claims, Briggs must still establish not only that his due process rights were violated but that in doing so, this caused him any damages. It is difficult to understand how the results of the February 2015 Hearing in which he pled guilty to throwing food caused him any damages.

### APRIL 2015 INCIDENTS

As a result of the February 2015 incidents, Briggs was placed in administrative segregation until released into D-Pod on March 26, 2015. It did not take Briggs very long after that to get in trouble again.

On April 14, 2015, Briggs was noticed by Detention Officers to have a black eye. He was asked what had happened and he explained that he had "caught an elbow in the rec yard." The Detention Officers reviewed video and could not see any evidence that Briggs had been attacked by another inmate. However, later that month a Detention Officer listened to a phone record of Briggs where he indicated to someone else that he had been hit in the eye a week previous. (Ex. B – CCJI 249-250). While further investigation was being performed, Briggs on April 22, 2015 was issued an Offense Report for covering up his intercom so that he could not hear or respond to announcements thus making an unsafe situation in case of an emergency. (Ex. B – CCJI 252). Finally, a Disciplinary Offense Report of April 27,

2015 indicated that Detention Officers, after reviewing additional video, reported an incident with Inmate Smith involving Briggs. It was clear that Briggs and Smith were looking at one another in the D-Pod after which Smith struck Briggs once in his left eye. As a result of this incident, both Smith and Briggs were placed in lockdown pending disciplinary review. Both inmates were charged with dangerous conduct, fighting and physical force. Also, Briggs was given a Major Rule Infraction Report stating that he had made a false statement. A hearing was set and Briggs refused to participate in the hearing and refused to enter a plea. (Ex. G – Taylor Depo 99-100). Based upon all of the evidence he was found guilty and given a 40-day lockdown sentence. (Ex. B - CCJI 203;263; 277-278). It was determined based upon the investigation of the Detention Officers that the altercation with Smith was due in part to Briggs continuing to provoke Smith even after Smith had asked him to stop. Smith stated, "The little dude just won't shut up," and made the additional statement that, "The guy thinks getting hit is going to help him." In fact, Smith reported that he had heard Briggs and Fuchs, a former inmate, talking and stating that they thought "getting hit is going to help his case." (Ex. H - Slyngstad Depo 78-79). In addition, Detention Officers as well as others believed that Briggs was "manipulative" and as a consequence, Briggs was found guilty. Briggs was able to properly process an appeal and the charge and sentence were later amended to the benefit of Briggs. It is difficult to understand under these circumstances how Briggs

19

can claim that there has been any violation of his due process rights.  It was his decision not to participate in the Hearing and the evidence was sufficient enough to support the finding of guilt.  (Ex. G – Taylor Depo 99-100; Ex. E – Lauchnor Depo 17-30).

## CONCLUSION

Gallatin County has spent a considerable amount of time setting forth in detail for its Statement of Disputed Facts and Additional Facts as well as providing the Court with all corresponding Exhibits.  Gallatin County contends that the undisputed evidence in this case establishes that at no time were any of Briggs' due process rights existing under the facts and circumstances of this case violated in any way.  Instead, the record shows that Briggs was treated fairly at all times and in many cases, treated perhaps better than he deserved to be treated.  He continually caused problems from when he first arrived at the Detention Center until he left.  Briggs' expert witness, Dr. Bowman Smelko, has correctly noted that Briggs, since well before arriving at the Detention Center has believed that he has been mistreated by the legal system and unjustly and wrongfully convicted of crimes because he is innocent and should not be in prison.  He does not suffer from post-traumatic stress disorder but rather an adjustment disorder to his life circumstances.  The experience of being disciplined does not seem to bother Briggs as much as the injustice he believes he has sustained.  Interestingly enough, those people who knew Briggs

before being incarcerated at the Detention Center have expressed the opinion that as a result of that incarceration as well as all other incarcerations, his personality has improved and he is more stable and a more "well-rounded individual." (Ex. I – Smelko Depo 61-68). In this case, Briggs makes numerous claims of due process violations but ignores the totality of the circumstances surrounding his incarceration at the Detention Center. He wishes to ignore all of the minor and major rule infractions that occurred after he arrived in March of 2014 including his failed attempts to kill himself. The evidence from the Detention Center Officers who are highly specialized in working with all types of individuals as well as the members of the TEAM properly classified and designated Briggs during his stay at the Detention Center and there is no factual and basis upon which Briggs can contend otherwise.

Briggs, consistent with his personality, believes that he has been treated unfairly. He contends that he is the victim, not the person who should be penalized. In making that statement Briggs ignores all of the problems that he caused on his own while staying at the Detention Center and instead points to a couple of isolated incidents in which he was involved with other inmates and professes to be the victim once again. However, the evidence establishes that Briggs was involved in all of the problems that arose from time to time and now asks this Court to step in and second guess the professionals who work with people like Briggs on a daily basis and second

guess their decisions.  Briggs was not denied due process at any time and any claim to that extent is not supported by the evidence and certainly there is no evidence to suggest that any violation of a due process right caused him any damages.

As noted by the Montana Supreme Court as well as the District Court, the evidence showed that most of the difficulties Briggs encountered resulted from his own behaviors and his claim of anxiety and stress due to incarceration are exaggerated.  That, in summary, describes the claims of Briggs in this case.

Therefore Gallatin County respectfully requests that Briggs' Motion for Summary Judgment be denied in its entirety and that his case be dismissed.  In the event that there are any claims that do survive, those claims are subject to disputed material facts that must be resolved by the trial jury.

**DATED** this 21st day of February, 2020.

STACEY & FUNYAK

By:   /s/ Calvin J. Stacey
       Calvin J. Stacey
       Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify pursuant to Local Rule 7.1(2)(E), that the foregoing brief, excluding the caption, certificate of compliance and certificate of service consists of 5,365 words, excluding the caption and certificates of service and compliance.

STACEY & FUNYAK

By:   /s/ Calvin J. Stacey
       Calvin J. Stacey
       Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of February, 2020, a true and correct copy of the foregoing ***Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment and Request for Summary Judgment Pursuant to Rule 56(f)(1), F.R.Civ.P.*** was served upon the following person(s) by the following means:

1,2 CM/ECF
\_\_\_Hand Delivery
\_\_\_Mail
\_\_\_Email

1.   Clerk of United States District Court
     For the District of Montana
     Butte Division

2.   Daniel V. Biddulph
     Ferguson Law Office, PLLC
     P.O. Box 8359
     Missoula, Montana 59807

STACEY & FUNYAK

By:   /s/ Calvin J. Stacey
      Calvin J. Stacey
      Attorneys for Defendant

23