WESTLAW

394 Mont. 387
Unpublished Disposition
(This decision without published opinion is referenced in the Pacific Reporter. See Mont. Sup. Ct. Internal Operating Rules 1 and Order of the Montana Supreme Court on Opinion

State v. Briggs
Supreme Court of Montana.   October 23, 2018   394 Mont. 387   429 P.3d 275 (Table)   2018 WL 5262780   2018 MT 261N   *(Approx. 5 pages)*

Supreme Court of Montana.

STATE of Montana, Plaintiff and Appellee,
v.
Kevin Anthony BRIGGS, Defendant and Appellant.

DA 16-0157
Submitted on Briefs: October 3, 2018
Decided: October 23, 2018

APPEAL FROM: District Court of the Eighteenth Judicial District, In and For the *276 County of Gallatin, Cause No. DC 14-71ax, Honorable Mike Salvagni, Presiding Judge

**Attorneys and Law Firms**

For Appellant: Nick K. Brooke, Smith & Stephens, P.C., Missoula, Montana

For Appellee: Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana, Martin D. Lambert, Gallatin County Attorney, Bozeman, Montana

**Opinion**

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶ 1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶ 2 Following jury trial Kevin Briggs (Briggs) was found guilty of Aggravated Assault; Sexual Assault;[1] Assault on a Peace Officer; Escape; and Criminal Possession of Dangerous Drugs. Briggs appeals asserting: 1) the District Court erred in denying his motion to dismiss for violation of his right to speedy trial; 2) his counsel was ineffective for failing to object or otherwise correct mischaracterization of the meaning of text messages and the result of DNA analysis; 3) the District Court erred when it failed to impose sanctions or suppression for the State's failure to preserve the victim's cell phone; and 4) the District Court erred when it failed to turn over Officer Bachich's personnel file. We affirm.

¶ 3 On February 1, 2014, Briggs was detained as a suspect in an aggravated assault and a sexual offense involving knives. Briggs walked away from the detention facility in belly chains and shackles. He was arrested in Oregon on February 21, 2014, and returned to Montana on March 10, 2014. On March 24, 2014, Briggs was charged with and arraigned on the charges of Aggravated Assault, Attempted Sexual Intercourse without Consent, Assault on a Peace Officer, Escape, and Failure to Register as a Sex Offender. On April 14, 2014, Defense counsel appeared at the omnibus hearing and requested continuance which was granted to May 12, 2014, at which time Briggs requested another continuance which was granted and the District Court reset the omnibus hearing to June 9, 2014. Following receipt of substantial discovery, Briggs sought another continuance and the court rescheduled the omnibus hearing to July 14, 2014.

¶ 4 On July 7, 2014, the State filed an Amended Information adding the offense of Criminal Possession of Dangerous Drugs (felony). Briggs sought another continuance of the

Exhibit A

omnibus hearing and it was reset to August 11, 2014. Following receipt of additional discovery, Briggs sought yet another continuance and the omnibus hearing was rescheduled for September 8, 2014. At the omnibus hearing on September 8, 2014, the court scheduled jury trial for February 17, 2015. Briggs received additional discovery October 20, 2014; November 20, 2014; December 5, 2014; and January 6, 2015. On January 21, 2015, the parties filed a notice agreeing the State had furnished Briggs all discovery.

¶ 5 On December 5, 2014, Briggs filed a motion to produce the arresting officer's personnel file asserting his history of use of force was material to his defense. Thereafter, the court conducted an in-camera inspection of the officer's personnel records and based thereon concluded due process did not require disclosure of these confidential records.

**2 ¶ 6 Also on December 5, 2014, Briggs filed a motion for dismissal or, alternatively, evidence suppression for the State's failure to preserve the victim's cell phone. Following hearing on this motion, the District Court denied the motion.

¶ 7 On January 15, 2015, defense counsel filed an ex parte motion to withdraw. The next day Briggs sought testing of the knives for DNA and fingerprints. The State responded it did not believe either DNA or fingerprint analysis could be conducted without delaying trial (which was then set for February 17, 2015). Also on January 16, 2015, Briggs filed a motion to dismiss asserting violation of his right to a speedy trial. Counsel's motion to withdraw was referred to Judge Brown (a non-presiding judge) who, following a January 26, 2015, hearing on the matter, recommended granting the motion.

¶ 8 On January 26, 2015, the court accepted Judge Brown's recommendation and appointed Briggs new counsel who, at the status hearing February 4, 2015, requested continuance of the trial because she had a homicide trial scheduled on the trial date. The court vacated the trial date, scheduled an omnibus hearing for March 11, 2015, and reset trial for July 27, 2015. On April 16, 2015, Briggs filed another motion to dismiss based on violation of his right to speedy trial. Following full briefing and a hearing, on July 1, 2015, the court denied both the original and second speedy trial motions. On June 17, 2015, Briggs's counsel provided the State an email indicating they wanted the knives tested for fingerprints and DNA. Jury trial started July 27, 2015.

¶ 9 A speedy trial violation presents a question of constitutional law that this Court reviews de novo to determine whether the court correctly interpreted and applied the law. *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. This Court reviews a district court's findings of fact underlying a speedy trial claim for clear error. *State v. Reynolds*, 2017 MT 25, ¶ 13, 386 Mont. 267, 389 P.3d 243. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Ariegwe*, ¶ 119.

¶ 10 We review ineffective assistance of counsel (IAC) claims on direct appeal if the claims are record based. *State v. Cheetham*, 2016 MT 151, ¶ 14, 384 Mont. 1, 373 P.3d 45. IAC claims are mixed questions of law and fact which we review de novo. *State v. Ailer*, 2018 MT 18, ¶ 9, 390 Mont. 200, 410 P.3d 964.

¶ 11 A motion to dismiss based on alleged suppression of exculpatory evidence is a question of law reviewed for correctness. *State v. Williams*, 2018 MT 194, ¶ 16, 392 Mont. 285, 423 P.3d 596. We review a lower court's grant or denial of discovery for abuse of discretion. *State v. Stutzman*, 2017 MT 169, ¶ 13, 388 Mont. 133, 398 P.3d 265.

¶ 12 **Speedy trial.** A defendant is guaranteed the right to a speedy trial by the Sixth and Fourteenth Amendments of the United States Constitution and by Article II, Section 24 of the Montana Constitution. Asserted speedy trial violations are analyzed by balancing four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of his right to a speedy trial; and (4) the prejudice to the accused as a result of the delay. *Ariegwe*, ¶ 20.

**3 ¶ 13 Here, in its 50-page Findings of Fact, Conclusions of Law, and Order, the District Court thoroughly and conscientiously considered and balanced the four *Ariegwe* factors and appropriately concluded Briggs's right to speedy trial was not violated.

¶ 14 For the first *Ariegwe* factor the District Court concluded the length of delay—542 days between February 1, 2014 when Briggs was initially detained and trial on July 27, 2015— well exceeded the 200-day threshold, requiring balancing of the *Ariegwe* factors.

¶ 15 Next the court considered the second *Ariegwe* factor, the reasons for delay. The District Court correctly found the 52 days from February 1, 2014 through March 24, 2014 attributable to Briggs. Any delay to March 24, 2014 (the date Briggs was arraigned and the matter could be put on a court calendar) would not have occurred but for Briggs's escape to Oregon and his extradition back to Montana. The District Court then attributed 21 days of delay (from March 24, 2014,[2] when Briggs was arraigned, to April 14, 2014, the date of the original omnibus hearing) to institutional delay. The court attributed 309 days of delay (April 14, 2014 to February 17, 2015) to the complexity of discovery and the court and counsels' calendars. The District Court thoroughly discussed the complex nature of the case and the extensive discovery and found no intentional delay on the part of the State. Indeed, the State actively worked to avoid delay. For example, when the State learned Briggs sought testing of the sexual assault kit, the State worked diligently to obtain expedited testing despite Briggs waiting almost four months after learning of the kit to request testing. Discovery was substantially complete by November 20, 2014, and the parties jointly acknowledged Briggs had all of the State's discovery on January 20, 2015, sufficiently in advance of the initial trial date. The record supports the District Court's findings attributing delay related to the production of discovery evidence as unintentional and due to the complex nature of the case and the extensive discovery required.

¶ 16 The District Court attributed 160 days of delay (February 17, 2015 to July 27, 2015) to Briggs resulting from his original counsels' withdrawal and trial. The District Court painstakingly reviewed the out-of-state cases asserted by Briggs in support of attributing this delay to the State and rightfully concluded it would not "rely on cases interpreting significantly different laws regarding speedy trial here." The 160-day delay related to Brigg's original counsel withdrawing is appropriately attributable to Briggs. Thus, the District Court concluded, of the 542 days from initial detention to trial, Briggs was responsible for 212 days and the State was responsible for 330 days in institutional delay. Throughout the case the State did not seek delay or engage in tactics which might create delay. Pursuant to *Ariegwe*, the District Court appropriately weighed this institutional delay less heavily against the State.

¶ 17 For the third *Ariegwe* factor, the District Court concluded Briggs asserted his right to speedy trial and declined to speculate whether his original counsel's withdrawal was part of a delay tactic employed by Briggs.

**\*4** ¶ 18 For the fourth *Ariegwe* factor, the District Court considered whether any delay prejudiced Briggs in terms of oppressive pretrial incarceration, his anxiety and concern, and possible impairment of his defense by loss of witness recall or loss of exculpatory evidence. The District Court thoroughly discussed the complex nature of the charges; the extensive discovery; and the need for expert testimony regarding the sexual assault examination, the serology analysis, the DNA analysis, and the toxicology analysis. The District Court appropriately concluded the time it took to bring the matter to trial was not unreasonable and was consistent with that of other discovery intensive major felony offenses. Briggs's pre-trial incarceration was not oppressive. The court reasonably concluded the violent nature of the underlying charged offenses and Briggs's initial escape merited setting a high bail and the high bail weighed less heavily in considering oppressiveness of pretrial incarceration.

¶ 19 Additionally, the District Court rightfully concluded most of the difficulties Briggs encountered during his pre-trial incarceration resulted from his own behaviors. The District Court thoroughly considered Briggs's mental health history, his history of suicide attempts, his lengthy criminal history, and prior significant periods of incarceration, ultimately concluding his "professed claims of anxiety and stress due to incarceration are exaggerated."

¶ 20 Finally, the District Court found Briggs presented no evidence of loss of witnesses or evidence and concluded there "has been no possible impairment of the defense in this case due to any delay." Although the 542-day delay weighed in Briggs's favor, the complex nature of the case and the lack of intentional delay on the part of the State outweighed the overall length of delay. The record on a whole supports the District Court's findings of fact, conclusions of law, and order denying Briggs's motion to dismiss for violation of his right to speedy trial.

¶ 21 **Ineffective Assistance of Counsel.** Briggs asserts during closing the prosecutor mischaracterized the DNA evidence indicating Briggs's DNA was on the handle and blade of both knives which was consistent with the victim's version of events. Briggs asserts this remark was not accurate and it was IAC for his trial counsel to not object to this statement.

Exhibit A

The State asserts there was no reason for defense counsel to object as it was consistent with the testimony and report of Joseph Pasternak, the biology DNA supervisor and technical leader at the State of Montana Forensic Science Division. We agree with the State.

¶ 22 Pasternak testified the DNA profile collected from the handle of the green-handled knife was a mixture of at least three individuals, Briggs and the victim could not be excluded as contributors, and "the estimated number of individuals that could be included in this DNA profile are approximately 1 in 1134 Caucasians." Pasternak testified the DNA profile collected from the blade of the green-handled knife indicated a mixture of two individuals with the major profile from this mixture matching the DNA profile of Briggs. The DNA profile collected from the handle of the pink and purple knife was a mixture of at least two individuals with the major profile from this mixture matching the DNA profile of Briggs. The DNA profile collected from the blade of the pink and purple knife was a mixture of at least two individuals, Briggs could not be excluded as a contributor, and "the estimated number of unrelated individuals in a random population expected to have a DNA profile that could be included in this mixed DNA profile is 1 in 121,600 Caucasians."

¶ 23 Given Briggs could not be excluded from the DNA found on the blades and handles of both knives, the remote incidence of unrelated individuals expected to have a DNA profile that could be included, and Briggs's presence at the scene of the offense, it was not inappropriate or objectionable for the prosecutor to argue in closing the DNA evidence was consistent with the victim's version of events. Had objection to the prosecutor's remarks been made, it would have been appropriately overruled. Defense counsel was also free to argue at closing that the DNA evidence was more consistent with Briggs's version of events.

**5* ¶ 24 Briggs also asserts during cross-examination the "State repeatedly took advantage of a text message that it knew was redacted to eliminate information about drug use." The State argues since Briggs has not argued on appeal that the District Court improperly admitted the text message, it was not improper for the State to question him as to what he meant by certain statements in the text. Briggs could confirm or disagree with the prosecutor's interpretation of the text. Again, we agree with the State.

¶ 25 Briggs has not contested the admission of State's trial Exhibit 19 on appeal and it was not inappropriate for the prosecutor to question him on the text's interpretation. Further, Defense counsel had opportunity to rehabilitate Briggs's testimony on re-direct to assure his interpretation of the texts was before the jury. Moreover, based on review of the record, we conclude Briggs has failed to demonstrate that even if improper, the prosecution's remarks prejudiced him. Thus, it was not IAC not to object to this cross-examination.

¶ 26 **Denial of Sanctions.** Briggs asserts the District Court erred when it failed to impose sanctions or suppression for the State's failure to preserve the victim's cell phone. In criminal cases, the State has a duty to provide the defense with exculpatory evidence in its possession. *State v. Ellison*, 2012 MT 50, ¶ 15, 364 Mont. 276, 272 P.3d 646 (discussing *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963) ). Briggs asserts the State had possession and control of the victim's phone and thus had a duty to gather and preserve evidence on the phone.

¶ 27 With the victim's permission, Detective McNeil photographed texts between Briggs and the victim around the time of the offenses and secured a call log. The photographs and call log were provided to Briggs in discovery. Detective McNeil did not possess and control the victim's phone and Briggs provides no controlling authority to the contrary. Briggs claims any exchange between himself and the victim to be exculpatory but fails to explain how. Further, any exchanges between Briggs and the victim were arguably also on Briggs's phone which was seized, searched, and preserved.

¶ 28 Although a defendant has a constitutional right to obtain exculpatory evidence which the State cannot interfere with, "police officers are not required to take initiative or even assist the defendant with procuring exculpatory evidence." *State v. Wagner*, 2013 MT 47, ¶ 26, 369 Mont. 139, 296 P.3d 1142. The State had no legal obligation to take possession and control over the victim's phone to assist Briggs in potentially obtaining exculpatory evidence.

¶ 29 **Denial of Personnel Records.** Briggs requested Officer Bachich's personnel records. Personnel records may be discoverable given the right set of circumstances (i.e., they contain exculpatory evidence) and after balancing the Defendant's need for exculpatory

Exhibit A

evidence with the privacy interest of the employee. This may include in camera review of the records. *State v. Burns*, 253 Mont. 37, 40, 830 P.2d 1318, 1320 (1992); *Stutzman*, ¶ 29.

¶ 30 Here, the District Court properly used the in-camera review procedure to weigh the effects of allowing discovery of the information contained in Bachich's personnel file and accurately determined it contained no relevant impeachment evidence or other exculpatory evidence requiring disclosure to Briggs. Given the record before us, we find no error on the part of the District Court.

¶ 31 In sum, Briggs has failed to demonstrate error on the part of the District Court in any of his claims on appeal.

**\*6** ¶ 32 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶ 33 Affirmed.

We concur:

MIKE McGRATH, C.J.

LAURIE McKINNON, J.

BETH BAKER, J.

JIM RICE, J.

## All Citations

394 Mont. 387, 429 P.3d 275 (Table), 2018 WL 5262780, 2018 MT 261N

| Footnotes | |
|---|---|
| 1 | The jury could not reach a verdict on the charged offense of Sexual Intercourse Without Consent, but found Briggs guilty of the lesser included offense of Sexual Assault. |
| 2 | The Court referenced March 10, 2014 to April 14, 2014 as institutional delay but had already attributed the delay between March 10 and March 24, 2014 to Briggs. |

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

