

EXHIBIT 29 Dr. Smelko

CAPITAL CITY
Consultants

25 S Ewing St Suite 416
Helena, MT 59601
406/461-1744
Fax: 406/502-1197

capitalcityconsultants@gmail.com                         capitalcityconsultantsonline.com

## Personal Injury Psychological Evaluation Report

**To:** Dan Biddulph
Ferguson Law Firm

**From:** Bowman Smelko, Psy.D, ABPP
Licensed Psychologist
Board Certified in Forensic Psychology

**RE:** Kevin Anthony Briggs          **DATE:** 04/16/2019

Mr. Briggs is a 33-year-old male who was evaluated in the Crossroads Correctional Facility on October 24, 2018. Bowman Smelko, Psy.D, a Licensed Psychologist, conducted the initial data collection and was author of this evaluation. This evaluation and its conclusions are limited to the data sources described below, some of which depend on the client's self-report.

### Informed Consent

At the outset of this evaluation, Mr. Briggs was informed of the nature and purpose of the psychological testing, the manner in which results would be reported, and the associated limits of confidentiality. Mr. Briggs was informed of Dr. Smelko's credentials for conducting this evaluation. He stated he understood this information and gave his consent to proceed.

### Referral Question/Presenting Problem

Mr. Briggs was referred for a psychological evaluation by his attorney, Dan Biddulph of the Ferguson Law Firm as Mr. Biddulph suspected his client may have suffered psychological injury during his incarceration while in Bozeman, Montana as well as the Montana State Prison and in Shelby, Montana. The purpose of this evaluation is to determine psychological damages Mr. Briggs may have experienced in relation to events, which occurred throughout his stay in correctional facilities.

## Evaluation Procedures

I met with Mr. Briggs on October 24, 2018. At this time, he was administered the Trauma Symptom Inventory as well as the Personality Assessment Inventory. On that same date, I conducted a personal interview geared towards both his current mental functioning, history, as well as symptomatology at the time of the traumatizing events in question. Further I utilized assessment instruments to include the Life Events Checklist for DSM-5 published through the National Center for Posttraumatic Stress Disorders as well as the Clinician Administered Posttraumatic Stress Disorder Scale for DSM-5 past month version. Further, I made phone calls to individuals which knew Mr. Briggs prior to and after incarceration, who will be listed below.

In addition, I had the opportunity to review a number of documents in relation to this case and interview multiple parties with an assessment of Mr. Briggs' previous functioning. These included the following:

Sources of Information

- Clinical Interview with Mental Status Exam
- Personality Assessment Inventory (PAI)
- Trauma Symptom Inventory.
- Life Events Checklist for DSM-5.
- Clinician Administered PTSD scale for DSM-5 past month version.

The following supplemental data was reviewed for the purposes of this assessment:

- Clinical documentation from Western Montana Mental Health Center to include:
    - Client group identification form.
    - Emergency consultation services dated April 18, 2018.
    - Emergency consultation summary dated May 7, 2014.
    - Emergency consultation summary dated May 14, 2014.
    - Emergency consultation summary dated August 4, 2015.
    - Emergency consultation summary dated January 19, 2016.
    - Treatment plan and review.
    - Adult clinical intake assessment.
    - Crisis plan.
    - Team meeting notes.
    - Medication chart.
    - Transportation authorizations.
    - Gallatin County Detention Center's spectrum medical notes.
    - Internal communication with Mr. Briggs.
    - Medical documentation from Bozeman Deaconess Hospital to include:
    - General emergency department documentation.
    - Medical documentation.
    - Documentation for Crossroads Correctional Facility to include:
    - General medical documentation..
    - Medication lists.
    - Medical administration records.
    - Orders.
    - Dental records.
    - Medical complaints and treatment.
    - Orthopedic injuries.
    - Diagnostic test results.
    - Comprehensive mental health evaluation.

Capital City Consultants, P.C.　　　　　Kevin Anthony Briggs  Personal Injury Psychological Evaluation Report　　2

Exhibit C

- - o Sick call request.
    - o Refusal to accept medical treatment.
- o Montana State Prison clinical intake assessment.
- o Montana State Prison Department of Corrections documentation (mental health and medical)
- o Montana 18th judicial District documentation.
- o Phone interview with Jim Del Duca.
- o Phone interview with Zen Meismer.
- o Phone interview with Clyde Landrie.
- o Pine Hills Youth Correctional Facility discharge report.
- o Pine Hills Youth Correctional Facility case progress review report, counselor summaries.
- o Updates to the court.
- o Order.
- o Disposition.
- o Supplemental reports to the court.
- o Juvenile sex offender evaluation.
- o Cascade County Youth Service Center incident reports.

## Plan of Report

In order to provide the best explanation of the results of this evaluation, I will begin by reviewing Mr. Briggs' history prior to the time of his incarceration and subsequent experiences leading up to present day. The second part of the report will deal with events that occurred throughout his incarceration and the immediate aftermath through his perception and recorded data. The report will then turn to results of the current evaluation. I will conclude with the summary section, which will deal with issues, recommendations, and prognosis.

## History Prior to Incident:

### Developmental History

Mr. Briggs reported he was born in Missoula, Montana. He stated he was raised by his mother until the age of 8 followed by his grandmother and briefly his father. He stated he had one younger half-brother, two younger half-sisters, and two older stepsisters.

While growing up, he reported he was physically, verbally, and emotionally abused by his mother as well as emotionally abused by his grandmother.

### Educational and Work History

Throughout life, he had success in school, did not have learning disabilities and reported he ultimately received an Associate's Degree for MSU Billings with a 3.79 GPA. He did not report previous military experience.

Mr. Briggs reported he has worked in construction and landscaping with his last job prior to incarceration being in 2011 with Oil and Gas. He reported he had this job approximately two to three months and also worked at Hastings as a clerk.

### Interpersonal History

Mr. Briggs reported that he has never been married nor does he have children.

## Medical History

Mr. Briggs reported no serious medical or physical injuries, which would be relevant to the current evaluation.

## Substance Abuse History

Mr. Briggs reported outside of facilities, he had used opiates, benzodiazepines, alcohol, marijuana, and was frequently prescribed Seroquel.

## Mental Health History

Mr. Briggs stated he first saw "A shrink" during his parent's custody dispute. He reported at the age of 11, he moved in with his father after his mother physically assaulted him. At this point, he saw a therapist as well.

At the age of 16, he was placed in Pine Hills Correctional Facility for a sexual offense. During this period of time, he received sex offense specific treatment through counselors at the facility. It was noted he was committed to Pine Hills in March 2003 and ultimately discharged in January 2004. While at Pine Hills, he received one major rule violation for possession of contraband and received numerous serious behavior reports for failure to carry out direct orders. However, it was noted he was a good student and received a 4.0 from correspondence courses from Miles City Committee College. His discharge summary suggested that while at Pine Hills, he progressed very slowly and made minimal progress.

A sex offender evaluation and risk assessment conducted during the course of his detention at Pine Hills reported in 1999, he was placed in Deaconess Hospital after gesturing suicide by cutting his wrist. At that time, he was diagnosed with depression, posttraumatic stress and ADHD. It was noted he was also evaluated in 2001 in Wyoming and was diagnosed with impulse control disorder, attention deficit hyperactive disorder, and parent-child problems. Further he was noted to have developing personality disturbance traits.

## Legal History

Mr. Briggs had his first interaction with the law at 16 which he was sent to Pine Hills as punishment for the crime of sexual intercourse without consent. After release, he saw Mike Sullivan and Christopher Pratt for sex offense specific therapy. He reported he later was sent to Deer Lodge, received sex offense specific treatment and then aftercare with Blair Hopkins. He stated he saw his victim at a coffee shop, informed his PO, and then restarted treatment with Mike Sullivan. He stated he further he was revoked for a DUI and not following conditions of supervision and returned to MSP until adjudication of the charge, which was dismissed.

## Events That Occurred in the Course of his Experience in Prison and the Immediate Aftermath

Mr. Briggs first began his time in prison while at Pine Hills. As noted previously, he was incarcerated for approximately nine months prior to his release into the community. While in Pine Hills, he claimed verbal and physical abuse from the guards at Pine Hills. After being re-violated and sent to the Montana State Prison, documentation suggests he claimed sexual assault by a guard. He also reported multiple instances of physical aggression and emotional abuse from the staff and from inmates. Despite this, no diagnoses or referrals were made when he was seen by mental health at the Montana State Prison.

After he was discharged from the Montana State Prison, he noted that he was 25 years of age and started school through MSU. During this period of time, he was charged with attempted sexual intercourse without consent, aggravated assault, assault on a peace officer, possession of dangerous drugs, escape and failure to register.

While incarcerated in the Gallatin County Correctional Facility, Mr. Briggs had multiple instances in which he

was assessed for suicidality. During this period of time, evaluators noted a diagnosis consistent with adjustment disorder with mixed anxiety and mood. They did not find his disorder to match the criteria of a serious disorder, which will require hospital placement. They also suspected aberrant personality features, which may have led to an exaggeration of symptomatology. For various reasons determined by Gallatin County Detention Center staff, Mr. Briggs was placed in administrative segregation for an extended period of time. Again, while at the Montana State Prison Mr. Briggs reported severe anxiety, requested medication and counseling. He was given a low dose of Buspar yet providers again suspected manipulation and drug seeking behaviors and ultimately did not provide a diagnosis.

Currently, Mr. Briggs is detained in the Crossroads Correctional Facility in Shelby, Montana.

During the course of my evaluation, he reported that he is not taking any medications nor is he engaged in counseling. He stated he has slight anxiety and no significant depression.

During interviews with individuals who knew Mr. Briggs before he went into corrections and since he came out, all consistently suggested he has actually improved since going to prison. They described him as thoughtful, positive, no anger or out-of-control behaviors. One individual noted he was well balanced and appropriate with no concerning issues. They stated he seemed lost before he went to prison and was abusing substances and now he seems much more in touch with others needs and his own emotional needs. They also noted he is more devoted to his religious practices.

### Behavioral Observations/Mental Status

Mr. Briggs arrived alert and on time to the current evaluation and was accompanied by a correctional officer. He was of normal body build weighing 160 pounds at 5 feet 6 inches tall. He was in red correctional-issued clothing, had good hygiene and good grooming. Notably, he had a shaved head.

Mr. Briggs did not have prosthetics, had normal posture and normal gait. His motor activity was within normal limits.

Throughout the evaluation, Mr. Briggs was highly demanding and attempted to insert his opinion wherever he could. Despite this, he was easily redirected and cooperative. His speech was normal. He spoke at a normal rate, had appropriate volume; however, was extremely monotone when he spoke. His affect was flat and when asked how he was feeling, he stated that everything was good. He reported positive sleep patterns and positive eating. He also reported a very active lifestyle while incarcerated to include lifting weights, engaging in yoga, religious activities, running programs, and enjoying time with friends playing board games.

He did not report significant symptoms associated with major mental illness outside of some minor anxiety related to fear of guards and other inmates. During my interview, he reported he has a fear he will be beat up at times because of his crimes and has been branded with the nickname "Escapo Rapo". This is based on his escape from the Bozeman Facility. He denied any current suicidal or homicidal ideation; however, does feel at times guards take others sides over his, which he feels is unjust. Throughout the evaluation, he demonstrated coherent, logical, and goal-directed thought. He did not report perceptual disturbances, disordered thought content or delusional ideation.

During my evaluation of Mr. Briggs, he was oriented to time, place, and situation. He demonstrated intact immediate, delayed, and chronological history. Mr. Briggs' concentration and attention was adequate and within normal limits. His fund of knowledge, intellectual functioning, abstract reasoning, as well as judgment were all within normal limits.

### Test Taking Attitudes/Validity

Some of the testing offers scales to measure possible impression management. Mr. Briggs' Personality Assessment Inventory was completely within normal limits with no indications of negative impression management. In addition, his Trauma Symptom Inventory was deemed valid. Mr. Briggs, although somewhat commanding at times, was cooperative with the testing. He appeared to put forth his best effort on all tasks during the testing. Test results are considered a valid representation of his current psychological functioning. No signs of malingering were noted.

## TEST RESULTS AND INTERPRETATION

### Emotional Functioning

#### Personality Assessment Inventory (PAI)

The Personality Assessment Inventory is a self-administered, objective test of personality and psychopathology designed to provide information on critical client variables in professional settings. Mr. Briggs' profile was deemed valid. Observation of his full scale profile suggested heightened levels of anxiety and paranoia as well as suicidal ideation. Interpretation of his subscale profile revealed significant elevations in the areas of cognitive, affective, and physiological signs of anxiety, traumatic stress, and feelings of persecution.

#### Trauma Symptom Inventory-2 (TSI-2)

Mr. Briggs completed the Trauma Symptom Inventory-2. As previously noted, his profile was deemed valid. Consistent with previous report on his Personality Assessment Inventory, he noted significant elevations in the areas of anxious arousal.

#### M-FAST

Due to Mr. Briggs' current claims, I found it important to administer testing related to the possibility of malingering. Results from the M-FAST suggested he was not attempting to exaggerate or claim symptoms, which were not present.

#### Life Events Checklist (LEC) for DSM-5, Interview Version

The Life Events Checklist for DSM-5 (LEC-5) is a self-report measure designed to screen for potentially traumatic events in a respondent's lifetime. The LEC-5 assesses exposure to 16 events known to potentially result in PTSD or distress and includes one additional item assessing any other extraordinary stressful events not captured in the first 16 items.

The LEC-5 demonstrated adequate psychometric properties as a standalone assessment of traumatic exposure, particularly when evaluating consistency of events that actually happened to the respondent. The LEC-5 demonstrated convergent validity with measures assessing varying levels of exposure to potentially traumatic events and psychopathology known to relate to traumatic exposure.

During the life events checklist interview, Mr. Briggs reported multiple traumas throughout his life. He reported he saw a tornado, saw a trailer burned down, was rear-ended in a car accident, was seriously hurt as a child, was physically assaulted by inmates and guards alike throughout his time incarcerated, had his girlfriend attempt to stab him on two occasions, and was mugged. In addition, he noted when he was hitchhiking, he was picked up by a gay couple and woke up to being raped and also noted he was sexually abused by a prison officer while at the Montana State Prison.

When asked in general about other experiences, he stated while in prison in general he has been unfairly treated by guards and they have turned their back when he has been assaulted by other inmates. He stated he considers himself a prisoner and not an inmate. Further, he noted his largest trauma is being put in prison for crimes he

did not do and being placed to solitary confinement when it was not his fault. He stated he spent 126 days in solitary confinement. He continued to note this was very traumatizing to him as he felt that he did nothing wrong and that he was placed in segregation for being the victim of crimes.

### Clinician-administered PTSD scale for DSM-5 (CAPS-5)

The CAPS-5 is the gold standard in PTSD assessment. The CAPS-5 is a 30-item structured interview that can be used to:

- Make current (past month) diagnosis of PTSD
- Make lifetime diagnosis of PTSD
- Assess PTSD symptoms over the past week

In addition to assessing the 20 DSM-5 PTSD symptoms, questions investigate the onset and duration of symptoms, subjective distress, and impact of symptoms on social and occupational functioning, improvement in symptoms since a previous CAPS-5 administration, overall response validity, overall PTSD severity, and specifications for the dissociative subtype (depersonalization and derealization).

For each symptom, standardized questions and probes are provided. Administration requires identification of an index traumatic event to serve as the basis for symptom inquiry. In this case, Mr. Briggs was administered the CAPS-5 after the LEC-5. The event in question was Mr. Briggs repeated negative experiences with officers and feeling he was not taken care of while in prison. Specifically, he stated his traumatic event was being placed in isolation on a 23 and 1-hour restriction for 126 days. He stated he received 1-hour recreation shower clean space from late April until September. He stated he felt like his life was in danger from other inmates as well as the guards. This was rated as a probable event regarding posttraumatic stress.

Reviewing instances from the past month, he stated he has had unwanted memories and noted sometimes when guards or inmates talk to him, he feels intimidated. He stated he has unpleasant dreams of this and stated that he feels like he is confined in a box at times. He stated he becomes emotionally upset about being in prison and about having to report to guards. He stated he has had past anxiety attacks; however, has not had one in quite a while. He also avoids negative thoughts or feelings by engaging in activities regarding incarceration and tries to attempt to avoid officers so that he is not yelled at or shamed. He stated he has strong negative beliefs about the system, about guards and inmates. He blames others for what has happened to him and feels he has been unfairly prosecuted. His strong negative feelings about prison and about the environment feels distant and cutoff because he is in prison, has difficulty experiencing positive emotions, and is constantly alert and watchful for prisoners to hurt him because he has been named escapo rapo and they treat him like a child molester per his account. He also feels the guards do not stick up for him and he would not report instances and is punished for them.

### Summary of Data related to the Referral Question:

Mr. Briggs is a 33-year-old male who was evaluated in the Crossroads Correctional Facility on October 24, 2018. Bowman Smelko, Psy.D, a Licensed Psychologist, conducted the initial data collection and was author of this evaluation. This evaluation and its conclusions are limited to the data sources described above, some of which depend on the client's self-report.

The current evaluation has been conducted to explore the negative psychological impact Mr. Briggs' exposure to solitary confinement and/or prison life in general has had over time. In an effort to do so, one must consider Mr. Briggs pre-existing conditions and how they may have been exacerbated and/or originated from the prison environment. Early on in life, Mr. Briggs was abused physically and emotionally, and was sent to Pine Hills Correctional Facility for a sexual assault. While at Pine Hills Correctional Facility, he was described as very

difficult to work with and obstinate. While at Pine Hills he was evaluated and was diagnosed with posttraumatic stress as well as depression, anxiety, and notably the evaluator believed he was developing a disordered personality. While at Pine Hills, Mr. Briggs reported he had negative interactions with guards and also made claims he was physically abused.

After Pine Hills Mr. Briggs reported multiple traumas including being raped, assaulted, and experiencing traumatic events such as being stabbed by his girlfriend and being involved in car accidents. Mr. Briggs continued to have legal difficulties while in the community and was violated on numerous occasions regarding his sexual offense. He ultimately was placed at the Montana State Prison where he made a claim he was sexually abused by a guard. He also reported physical abuse from inmates as well as other correctional staff. After being released, Mr. Briggs again committed a sexual act. Mr. Briggs to this day denies he engaged in his reported sexual behavior and feels wrongly convicted and noted that his conviction creates great distrust and paranoia.

Mr. Briggs initially escaped from the Gallatin County Correctional Facility and upon return during the sentencing phase, felt suicidal on numerous occasions and was seen by mental health professionals. Those mental health professionals reported his presentation was possibly an exacerbation of previous issues. They did not diagnosis him with a posttraumatic stress disorder rather an adjustment disorder to his life circumstances. They further noted a personality disturbance; however, did not diagnose it at that point. While incarcerated in the Gallatin County Correctional facility, he was placed in solitary confinement for 126 days. During my conversation with Mr. Briggs, the experience of isolation did not seem to bother him as much as the injustice he felt. He reported he was placed in isolation as he was seen as a problem for the facility as he was being assaulted. These injustices seemed to bother him significantly and created greater paranoia and anxiety for him.

Since arriving at the Crossroads Correctional Facility, he has not been on medication nor received counseling. He does not demonstrate symptoms consistent with posttraumatic stress, anxiety, or depression. Individuals who knew him prior to being detained in the Bozeman Facility suggested he has only improved in personality as well as emotional and behavioral presentation. They described him as a more stable and well-rounded individual. Despite this, Mr. Briggs indicates he continues to have a healthy fear of guards and inmates.

Despite his claim, he functions significantly well and is involved in many activities in prison including running programs, religious activities, and reported socialization with friends. Overall, Mr. Briggs greatest claim, which could be associated with ongoing issues, is his ongoing distrust that officers will take care of his needs. He reports he has notified officers of other inmates negative behaviors, which have resulted in him being detained in administrative segregation or written up. He states he has also been written up for not reporting the negative behaviors of other inmates because he does not trust he will be taken care of and believes he will be assaulted by other inmates due to his crimes.

**Implications and Recommendations for Mr. Briggs:**

Despite having trauma outside of the prison and being diagnosed as a child with multiple issues Mr. Briggs does not currently qualify for DSM 5 diagnoses nor do I believe he currently requires treatment or care from mental health professionals. Despite this his experience in prison has intensified his highly paranoid and distrustful belief system. His fear, paranoia, and anxiety revolve around individuals disliking his sexual crimes and his experience that guards have not taken care of his needs and have rather punished him for being assaulted on numerous occasions. He further noted negative experiences with guards starting from Pine Hills to present day. While his time in prison has not created new mental health issues, nor have mental health issues persisted, his experiences have exacerbated issues of anxiety, paranoia and distrust that began in childhood due to his own family instability and his personal abuse.

_[signature]_, Psy.D, ABPP

Bowman Smelko, Psy.D, ABPP
Licensed Psychologist
Board Certified in Forensic Psychology

Capital City Consultants

25 S. Ewing St. Suite 416

Helena, MT 59601

P: 406-282-1744

F: 406-502-1197