IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| KEVIN BRIGGS, <br><br> Plaintiff, <br><br> vs. <br><br> GALLATIN COUNTY and JOHN DOES 1-8, as individuals and in their official capacity as detention officers, <br><br> Defendants. | CV 18-10-BU-KLD <br><br><br> ORDER |

Plaintiff Kevin Briggs brings this action under 42 U.S.C. § 1983, alleging Defendants violated his due process rights under the Fourth and Fourteenth Amendments to the United States Constitution while he was a pretrial detainee at the Gallatin County Detention Center ("Detention Center"). Briggs has filed a motion for summary judgment on all claims set forth in the Complaint. In responding to Briggs' motion, Defendants ask the Court to enter summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56(f)(1). Briggs' motion for summary judgment is granted in part and denied in part as set forth below, and Defendants' request for summary judgment pursuant to Rule 56(f)(1) is denied.

1

I.    **Background**

The events giving rise to this case date back to February 2014, when Briggs was arrested by the Bozeman City Police in Bozeman, Montana. After his arrest, Briggs escaped from the Bozeman City Police station and fled to Oregon. Briggs was eventually arrested in Oregon and extradited to Montana, where he was held at the Detention Center pending trial on several felony charges. When Briggs first arrived at the Detention Center on March 10, 2014, he was placed in administrative segregation. (Doc. 39-20 at 1; Doc. 48 at ¶ 3). Over the course of the next several months, Briggs made two suicide attempts, had altercations with other prisoners, was written up for various rule infractions, and was sometimes placed on lockdown for disciplinary reasons. (Doc. 39-20; Doc. 48 at 33-42; Doc. 50-2).

In February 2015, Briggs was involved in two altercations with another inmate, Tommy Steele. (Doc. 48 ¶ 6). These incidents were not witnessed by Detention Center staff, but were captured on surveillance video with no audio. On February 22, 2015, after reviewing surveillance video from the relevant period, Detention Officer Nick Waliser prepared a Disciplinary Offense Report. Officer Waliser stated that Steele and Briggs were involved in a verbal fight on February 8, 2015, and video evidence showed that "Steele did punch Briggs with a closed right fist once in the face." (Doc. 39-11 at 2; Doc. 50-2 at 56). Officer Waliser wrote

2

that video evidence from the second incident, which took place on February 11, 2015, similarly showed that Steele and Briggs were "involved in a verbal fight" and that "Steele did punch Briggs with a closed right fist twice in the face." (Doc. 39-11; Doc. 50-2 at 56).

Although the surveillance video did not contain any audio and did not show Briggs assaulting Steele on either occasion, Officer Waliser explained that he was "writing Briggs up for his role in instigating [both fights] and refusing to lock himself down, thus removing himself from the situation." (Doc. 39-11 at 2; Doc. 50-2 at 56). While reviewing additional surveillance video, Officer Waliser saw that on February 20, 2015, Briggs "turned and threw what appeared to be food at" Steele, who was seated next to him at table. (Doc. 39-11 at 2; Doc. 50-2 at 56). Officer Waliser referred to the "incident report for full details" and noted that Briggs had been notified of the disciplinary writeup by way of a ticket issued on February 22, 2015. (Doc. 39-11 at 2; Doc. 50-2 at 56). The Disciplinary Offense Report charged Briggs with three disciplinary offenses – two counts of "fighting/physical force" as a result of the physical altercations with Steele, and one count of "arguing, being rude, disrespectful, insulting towards staff or inmates" based on the food throwing incident. (Doc. 39-11; Doc. 39-12; Doc. 50-2 at 56).

3

Officer Waliser also prepared an Incident Report/Rule Infraction form ("Incident Report") detailing the incidents giving rise to the disciplinary charges. (Doc. 50-2 at 61-62). The Incident Report is dated February 23, 3015 and provides additional details not set forth in the Disciplinary Offense Report. For example, Officer Waliser noted that when he interviewed Steele after reviewing the surveillance video, Steele said that Briggs had been taunting him. (Doc. 50-2 at 61). Officer Waliser acknowledged that he did not have video evidence of Briggs assaulting Steele, but observed that "in all of the video footage it appears as though Briggs is continually challenging/taunting/ harassing, or inciting a fight between him and Steele." (Doc. 50-2 at 61). Officer Waliser wrote that "Briggs created a physical fight stemming from his words" and video from February 20, 2015 showed Briggs "being rude, disrespectful, and insulting towards Steele by throwing food at him, yet again instigating another situation where a fight could have resulted." (Doc. 50-2 at 61). Officer Waliser's Incident Report also set forth the verbatim contents of an incident report completed by Detention Officer Beausoliel on February 21, 2015. (Doc. 50-2 at 61; Doc. 50-2 at 55). Officer Beausoleil stated that he watched "Briggs walk into his cell standing by his door looking out towards the day room towards Inmate Steele's direction." (Doc. 50-2 at 55). Steele went to his own cell and pushed the intercom, telling officers that

Briggs wanted him to come into his cell to fight. (Doc. 50-2 at 55). Briggs denied

asking Steele to enter his cell to fight, and the whole pod was placed on lockdown.

(Doc. 50-2 at 55).

Briggs was served with two Major Rule Infraction Reports advising him that

a disciplinary hearing was scheduled for February 26, 2015. (Doc. 39-11 at 1; Doc.

39-12 at 1; Doc. 50-2 at 58; Doc. 50-2 at 63). One of the Rule Infraction Reports

contains the same "description of incident" set forth in Officer Waliser's February

22, 2015 Disciplinary Offense Report (Doc. 39-12; Doc. 50-2 at 58), and the other

refers the reader to "see report" for a description of the incident. (Doc. 39-11; Doc.

50-2 at 63). The Major Rule Infraction Report Hearing ("Disciplinary Hearing

Report") issued after the hearing indicates that Briggs was found guilty on one

fighting charge and not guilty on the other, and pled guilty to the food throwing

offense. (Doc. 39-13; Doc. 50-2 at 64). As a result, Briggs was given 35 days in

disciplinary segregation, or "lockdown." (Doc. 39-13; Doc. 50-2 at 64).

The Disciplinary Hearing Report advised Briggs of his right to appeal "by

filing a written request (on a Grievance Form) for review and my reasons for

review and with the Detention Center Administrator within twenty-four (24)

hours." (Doc. 39-13; Doc. 50-2 at 64). Briggs submitted an appeal to Administrator

Jason Jarrett, who explained during his deposition that no further action was taken

because the appeal did not meet the criteria set forth in Jail Inmate Manual. (Doc. 39-3 at 8). Briggs served his disciplinary sentence, and was released from disciplinary segregation at the end of March 2015. (Doc. 40 at ¶ 23).

In April 2015, Briggs was involved in another altercation with a different inmate, James Smith. On April 14, 2015, Detention Officer David Lauchnor learned that Briggs had a bruise on his face and reviewed surveillance video as part of an investigation into the cause of the injury. (Doc. 39-8; Doc. 39-6 at 3). Earlier that day, Briggs had reported being injured while playing basketball (Doc. 50-2 at 66), but Officer Lauchnor could not find any surveillance video confirming that explanation. (Doc. 36-6 at 4-5; Doc. 50-2 at 67). While reviewing surveillance video from April 13, 2015, Officer Lauchnor saw that Briggs had been involved in a confrontation with Smith. As described in Officer Lauchnor's Disciplinary Offense Report, the video, which did not have audio, showed Smith "puff up his chest and lean down towards" Briggs, who was seated at a table in the dayroom, and then return to his cell. About a minute later, Smith came back out of his cell and charged Briggs, "striking him once in the left eye." (Doc. 39-8 at 1; Doc. 50-2 at 70). Smith and Briggs were both locked down pending disciplinary review. (Doc. 39-8; Doc. 50-2 at 70). The record contains three Incident Report/Rule Infraction reports regarding the events of April 13, 2015 and April 14, 2015. (Doc.

50-2 at 66-68).

On April 28, 2015, Briggs was served with a Major Rule Infraction Report alleging he had committed the disciplinary offenses of "fighting/physical force" and "making a false statement." (Doc. 39-14; Doc. 50-2 at 72). The Rule Infraction Report referred the reader to "see report(s)" for a description of the incident. (Doc. 39-14 at 1; Doc. 50-2 at 72). Detention Officer Slyngstad was assigned as the hearing officer for Briggs's subsequent disciplinary hearing. In a Disciplinary Hearing Report dated April 29, 2015, Officer Slyngstad indicated that Briggs refused to enter a plea, was found guilty, and would be placed in disciplinary lockdown for 40 days with credit for time served. (Doc. 39-15; Doc. 50-2 at 73).

Briggs appealed, and on May 7, 2015 Administrator Jarrett amended the "fighting/physical force" charge to "rude and/or disrespectful to inmate," and reduced the disciplinary lockdown period to 10 days. (Doc. 39-25 at 4; Doc. 50-2 at 74). Briggs submitted an appeal from that determination as well. (Doc. 39-25 at 2-3). On May 18, 2015, Briggs was notified that his disciplinary sanctions would not be overturned and that, "based upon [his] recent behavior, administrative segregation is the best classification for you at this time." (Doc. 39-25 at 1; Doc. 50-2 at 77). Briggs was held in administration segregation until August 31, 2015. (Doc. 39-29). He remained at the Detention Center until January 2016, when he

was sentenced to a lengthy term of imprisonment following his conviction on several felony charges.

On February 1, 2018, Briggs commenced this action against the Gallatin County Sheriff's Office; the Gallatin County Detention Center; the Gallatin County Sheriff in his official capacity; Jail Commander Jarrett in his individual and official capacities; Detention Officers Waliser and Lauchnor in their individual and official capacities; and eight John Doe defendants. (Doc. 1). In September 2018, the parties entered a written stipulation pursuant to which Gallatin County admitted that the individual Defendants were acting within the course and scope of their employment, and the parties agreed to substitute Gallatin County as the sole named Defendant. (Docs. 21, 22).

Briggs advances claims under 42 U.S.C. § 1983, alleging that Defendants' conduct violated his due process rights under the Fourth and Fourteenth Amendments to the United States Constitution. The Complaint asserts five claims for relief.[1]  In Counts 1 and 2, Briggs alleges due process violations based on his February 2015 disciplinary proceedings. Count 3 alleges due process violations based on his April 2015 disciplinary proceedings. In Count 4, Briggs alleges

---

1  Count 6 of the Complaint has been dismissed pursuant to stipulation by the parties (Docs. 21, 22).

Defendants violated his due process rights after the April 2015 disciplinary proceedings by placing him in administrative segregation for more than 120 days without a hearing and without justification for classification in administrative segregation. Finally, in Count 5, Briggs alleges Defendants failed to protect him from harm by other inmates, in deliberate indifference to his constitutional rights.

Briggs moves for summary judgment on all claims. Although Defendants have not filed a cross-motion for summary judgment, they ask the Court to grant them summary judgment on all claims pursuant to Rule 56(f)(1).

## II.    Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

The dispositive motion deadline in this case passed on January 24, 2020. (Doc. 37). As noted above, Defendants have not filed a formal cross motion for

summary judgment. Instead, they ask the Court to enter judgment in their favor pursuant to Rule 56(f)(1), which provides that a district court may "grant summary judgment for a nonmovant" after "giving reasonable notice and a reasonable time to respond." See also *Celotex*, 477 U.S. at 326 (recognizing that a district court may enter summary judgment sua sponte "so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.") Thus, even when there has been no cross-motion for summary judgment, a district court has the authority to enter summary judgment sua sponte for the non-moving party if the record is sufficiently developed and the original movant has had a "full and fair opportunity" to demonstrate a genuine issue of material fact. *Gospel Missions of Am. v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir. 2003) (quoting *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982)). See also *Albino v. Baca*, 747 F.3d 1162, 1176-77 (9th Cir. 2014) (en banc).

Rule 56(f)(1) has been described as "a tool that may be used by the *court*" to grant summary judgment to a nommoving party "after first giving the parties notice and a reasonable time to respond." *Smith v. Amaru*, 2012 WL 4882257 *2 (W.D. Wash. Sept. 24, 2012) (emphasis in original). Defendants have had the opportunity to respond to Briggs' statement of undisputed facts by filing and statement of genuine issues that includes several additional facts they rely on in

opposing his motion for summary judgment. That statement of additional facts is 30 pages long, and contains 72 paragraphs of facts that Defendants now rely on in support of their request for relief under Rule 56(f)(1). (Doc. 48 at 30-62). Because Defendants did not file a cross-motion for summary judgment, the only opportunity Briggs has had to respond to Defendants' arguments and additional facts has been by filing a reply in support of his own motion for summary judgment. Rule 56(f)(1) is not a substitute for filing a motion for summary judgment, and the Court declines to read the rule as providing a means for parties to effectively seek summary judgment after the dispositive motion deadline has passed. Nevertheless, even considering Defendants' request for relief under Rule 56(f)(1) as a cross-motion for summary judgment, the Court finds for the reasons discussed below that there are genuine issues of material fact precluding summary judgment in favor of Defendants.

## III.   **Discussion**

To prevail on a claim under 42 U.S.C. § 1983, "a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990). Briggs alleges that Defendants, acting under color of state law, violated his rights under

the due process clause of the Fourteenth Amendment to the United States Constitution during the disciplinary proceedings in February and April of 2015, and by placing him in administrative segregation for the four-month period after his April 2015 disciplinary proceedings. Briggs also alleges Defendants failed to protect him from harm by other inmates in violation of his Fourteenth Amendment rights.

The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV, § 1. This clause provides a basis for both substantive and procedural due process claims. For purposes of either type of claim, the threshold consideration is whether the plaintiff has been deprived of a protected interest in property or liberty. *American Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). "Only after finding the deprivation of a protected interest" does the court "look to see if the State's procedures comport with due process." *American Manufacturers*, 526 U.S. at 59.

To succeed on his procedural due process claims, Briggs "must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa*

*Clara*, 995 F.3d 898, 904 (9th Cir. 1993)). Fundamentally, procedural due process requires "some kind of notice" and "some kind of hearing" before the State can deprive a person of life, liberty, or property. *Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990).

A liberty interest may arise directly from the Constitution or from state law. *Makanani v. Wagutsuma,* 2019 WL 7373030 *5 (D. Haw. Dec. 31, 2019) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013). "In the prison context, liberty interests are 'generally limited to freedom from restraint [that] … imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Makanani*, 2019 WL 737030 *5 (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). Because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," convicted prisoners do not have a liberty interest in being free from segregated confinement imposed as a disciplinary measure.[2] *Sandin,* 515 U.S. at 485. See also *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996).

_____

2  To the extent Defendants rely on *Sandin* to argue Briggs did not have a protected liberty interest in avoiding disciplinary segregation without due process, they are mistaken. With respect to prison disciplinary proceedings, Sandin's "atypical and significant hardship" test applies to convicted prisoners, but not to

Unlike a convicted prisoner, however, "a pretrial detainee may have a liberty interest in not being placed in disciplinary segregation." *Resnick v. Hayes* , 213 F.3d 443, 448 (9th Cir. 2000). As a pretrial detainee, Briggs had a protected liberty interest in remaining free from any type of punishment, including disciplinary segregation. *Mitchell,* 75 F.3d 517, 523 (9th Cir. 1996). See *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) (recognizing that "the Fourteenth Amendment prohibits all punishment of pretrial detainees"). While pretrial detainees are not "free to violate jail rules with impunity," they may not be subjected to disciplinary segregation without a due process hearing and the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Mitchell*, 75 F.3d at 523

*Wolff* established five procedural protections that are applicable to pretrial detainees facing disciplinary proceedings: (1) written notice of the charges at least 24 hours before the hearing; (2) an impartial hearing body; (3) the right to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; (4) assistance from another inmate or staff if the prisoner is illiterate or the issues complex; and (5) a written statement of the

---

pretrial detainees. *Mitchell*, 75 F.3d at 523. Because Briggs was a pretrial detainee at all times relevant to this action *Sandin* does not apply.

evidence relied on and the reasons for the disciplinary action. *Makanani,* 2019 WL 737030 *5 (citing *Wolff*, 418 U.S. at 563-71).

In addition, a finding of guilt on a disciplinary charge must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 US 445, 454 (1985 ) See also *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003). "The 'some evidence' standard is 'minimally stringent,' and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder." *Wheeler v. Hodges*, 2016 WL 4210057 *5 (E.D. Cal. Aug. 9, 2016) (citing *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994). See *Cato v. Rushen*, 824 F.2d 703, 704 (9th Cir. 1987) (the information that forms the basis of a prison disciplinary action must have some indicia of reliability).

### A.  February 2015 Disciplinary Proceedings (Counts 1 and 2)

In Counts 1 and 2, Briggs asserts several due process violations based on his February 2015 disciplinary proceedings.

#### 1.  Disciplinary Hearing Report

Briggs claims Defendants violated his due process rights because the February 26, 2015 Disciplinary Hearing Report did not include a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action taken, as required by *Wolff*. Consistent with *Wolff*, the preprinted

Disciplinary Hearing Report form asks for the following information: Evidence Present, Witnesses, Lay-Advisor, Inmates Statements (if not recorded), Inmates Plea, Disposition Found, and Action taken (explain). (Doc. 39-13). In completing the form after the hearing, the hearing officer left the Evidence Present, Witnesses, and Lay-Advisor sections blank, and handwrote the following near the sections asking for Inmates Statements and Inmates Plea: "Not Guilty on 1 fighting charge. Not Guilty/Plead guilty to throwing food." As to the disposition and action taken, the hearing officer wrote "Guilty for fighting 35 days L/D w/ credit for time. N/P out on 3-36-15 @ 930." (Doc. 39-13).

Briggs argues the Disciplinary Hearing Report is deficient on its face because it does not specify which fighting charge he was convicted of, does not describe any of the evidence relied on, and does not explain does not identify any reasons for the disciplinary action taken. In response, Defendants argue Briggs "ignores the fact that the written reports relied on by the hearing members were referred to in the Major Rule Infraction Report and provided to Briggs as well," such that Briggs "understood the claims being made against him." (Doc. 49 at 21).

While Briggs was served with two Major Rule Infraction Reports a few days before his disciplinary hearing, and those Infraction Reports referred to Officer Waliser's Disciplinary Offense Report, the Disciplinary Hearing Report issued

after the hearing does not refer to any of those documents. It does not state what evidence was presented at the hearing, does not incorporate any of the written Disciplinary Offense Reports or Infraction Reports by reference, and does not contain any written statement whatsoever of the evidence the factfinder relied on at the hearing to find Briggs guilty of one fighting charge but not guilty of the other. While a written statement need not be detailed to satisfy *Wolff,* it must be sufficient to inform the inmate of the evidence relied on by the factfinders in reaching their decision. See *Mujahid v. Apao*, 795 F.Supp. 1020, 1027 (D. Haw. 1992) (citing *Brown v. Frey*, 807 F.2d 1407, 1412 (8th Cir. 1986)). Because Briggs did not receive a written statement identifying any of the evidence relied on and the reasons for the disciplinary action taken, he is entitled to summary judgment on this aspect of his procedural due process claim.[3] Whether this particular procedural due process violation caused Briggs any damages, however, is for the trier of fact to decide.

2.   Disciplinary Hearing

---

3  To the extent Briggs argues the Hearing Report was deficient because it does not explain why his witness was not allowed to testify, he is mistaken. A disciplinary board is not required to provide a written statement of reasons for denying witnesses. See *Griffin v. Foul,* 2019 WL 4073391 *4 (E.D. Cal. Aug. 29, 2019 (citing *Ponte v. Real,* 471 U.S. 491, 496 (1985)).

Briggs alleges Defendants violated his due process rights during the February 2015 disciplinary proceedings by: (1) denying him the right to call witnesses at the hearing; (2) subjecting him to disciplinary segregation with no factual basis; (3) denying him the right to review the surveillance video, and; (4) denying him the right to appeal.

a.   *Witnesses*

"*Wolff* requires that jail authorities allow an inmate who faces disciplinary proceedings and whose liberty interest is threatened to call witnesses in his defense, when permitting him to do so will not be unduly hazardous to institutional safety and correctional concerns." *Mitchell,* 75 F.3d at 525 (citing *Wolff*, 418 U.S. at 566). See also *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003).

The Detention Center's Inmate Manual states that "[a]n inmate will be allowed to present documentary evidence in his/her defense and may, at the discretion of the Disciplinary Hearing Panel, be allowed to call witnesses." (Doc. 39-23 at 6). The Inmate Manual lists several reasons why a witness may be denied, including if "[t]he witness' testimony would be either redundant or immaterial" or "if permitting the witness to testify poses a threat to institutional safety, the safety of the witness, or the safety of third persons." (Doc. 39-23 at 6).

19

The Disciplinary Offense Report completed by Officer Walisor on February 22, 2015 contains a space to identify Inmate Witnesses. (Doc. 39-11 at 2). Briggs wrote Michael Fuchs' name on the space provided on the form. (Doc. 39-11 at 2). Briggs argues Defendants violated *Wolff*'s due process requirements by refusing to let Fuchs testify at the disciplinary hearing without providing any explanation.

In response, Defendants maintain that Briggs failed to properly identify Fuchs as a witness. Defendants rely on the Major Rule Infraction Report, which advises inmates of their rights, including the right to "submit a list of witnesses for the hearing." (Doc. 50-2 at 63). According to Defendants, writing Fuchs' name on the Disciplinary Offense Report form was not sufficient to satisfy the Detention Center's requirement that inmates submit a list of witnesses for the hearing. Even if it was, Defendants argue the disciplinary hearing panel reasonably found that no witnesses were needed.

Notably, however, in briefing this issue Defendants do not support either of these arguments with any citation to the record. (Doc. 49 at 20-21). They do not point to any deposition testimony, affidavits, or declarations supporting their argument that Briggs did not properly identify Fuchs as a witness and that the hearing committee had a legitimate reason for refusing to let him testify. While Defendants do not refer to any supporting evidence in their response brief, in their

statement of genuine issues they refer to Officer Taylor's deposition testimony.
(Docs. 48 at 8). Officer Taylor testified that it would not have been sufficient for
Briggs to write Fuchs name on the form and he should have sent a separate note.
(Doc. 50-7 at 5-6). According to Officer Slyngstad, however, writing Fuchs' name
on the form might well have been adequate. (Doc. 39-5 at 12). On this record,
whether it was sufficient for Briggs to handwrite Fuchs' name on the Disciplinary
Offense Report is not clear. Nor is it clear based on the evidence as presented by
the parties whether Fuchs was not allowed to testify as a witness for one of the
reasons set forth in the Inmate Manual. These are genuine issues of material fact
that are not properly resolved on summary judgment.

      b.   *Surveillance Video*

*Wolff* also protects an inmate's right to present documentary evidence when
consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 563-
71. Thus, a prison disciplinary body may not arbitrarily refuse to consider
exculpatory evidence, including video surveillance. See e.g. *Howard v.
Copenhaver*, 2015 WL 404092 *3 (E.D. Cal. Jan. 28, 2015); *Howard v. U.S.
Bureau of Prisons*, 487 F.3d 808, 813-14 (10th Cir. 2007) (an unjustified refusal to
produce and review video that a prisoner contends would bolster his defense is a
deprivation of the right to due process).

Here, Briggs does not argue that the disciplinary hearing panel refused to consider the surveillance video in reaching its decision. Rather, he argues Defendants unjustifiably denied his request that he be allowed to review the surveillance video in presenting his defense. At his deposition, Officer Taylor testified that did not remember whether Briggs made such a request. (Doc. 39-7 at 13). However, Briggs has stated in response to Defendants' discovery requests that he asked to review the surveillance video during his disciplinary hearing. (Doc. 48 at 10). He claims that his request was denied not based on institutional safety concerns, but pursuant to a standing Detention Center policy of not allowing inmates to produce documentary evidence in their defense. As evidence of such a policy, Briggs relies on deposition testimony by Officer Slyngstad, who stated that in his experience inmates were not given the opportunity to review video during disciplinary hearings. (Doc. 39-5 at 7). As Defendants point out in response, however, Officer Waliser and Detention Officer Bryan Taylor testified at their depositions that they did not know whether the Detention Center had a policy prohibiting inmates from reviewing video as part of a disciplinary hearing. (Doc. 48 at 11). Officer Taylor testified that he did not think Briggs would have been allowed to review the video due to security concerns.(Doc. 50-7). Whether Briggs requested that the video be produced, and whether that request was properly denied

based on institutional safety concerns is an issue of fact precluding summary
judgment on this aspect of Briggs' claim.

        c.    *Supporting Evidence*

      Due process requires that a disciplinary hearing decision must be supported
by some reliable evidence in the record. See *Hill*, 472 U.S. at 454; *Powell,* 33 F.3d
at 40. "Ascertaining whether this standard is satisfied does not require examination
of the entire record, independent assessment of the credibility of the witnesses, or
weighting of the evidence. Instead, the relevant question is whether there is any
evidence in the court that could support the decision of the disciplinary board."
*Hill*, 472 U.S. at 455-56.

      Briggs argues Defendants violated his due process rights because the
February 2015 disciplinary hearing decision did not meet this standard, and was
not supported by any reliable evidence in the record. According to Briggs,
surveillance video of both altercations unequivocally demonstrates that he did
nothing to instigate a fight with Steele, and that Steele assaulted him on both
occasions. Briggs also relies on Officer Waliser's written reports, which state in
part that "Briggs did not assault Steele in any way" (Doc. 39-11) and found no
"video evidence of [Briggs] assaulting Steele." (Doc. 39-20 at 1). Briggs maintains
there is no objective evidence to contrary, and that any attempt by Defendants to

"to rely on a conclusion Briggs verbally instigated the assault is made without supporting evidence and is simple conjecture." (Doc. 39 at 13).

In response, Defendants argue that other statements in the written reports of record and video of the food-throwing incident demonstrate that Briggs instigated the assaults by Steele. Thus, Defendants take the position that the disciplinary decision finding Briggs guilty of one fighting charge and not guilty of the other fighting charge is supported by some evidence in the record. (Doc. 49).

The Court agrees that Defendants have come forward with sufficient evidence to withstand Briggs' motion for summary judgment on this issue. Officer Taylor was a member of the disciplinary hearing panel (Doc. 50-7). Although the Hearing Report does not identify what evidence the disciplinary hearing panel relied on in making its decision, Officer Taylor testified at his deposition that evidence supporting a finding of guilty included the surveillance video, and Officer Waliser's initial Disciplinary Offense Report. (Doc. 50-7 at 8-9). However, Officer Taylor also testified that he did not recall which of the two fighting offenses Briggs was found guilty of, and could not remember whether he reviewed any other reports, including the Incident Report which provided additional factual detail. (Doc. 50-7 at 9).

24

The Court has reviewed Exhibits I-K attached to Doc. 39, which are the videos of the February 2015 incidents involving Briggs and Steele.   Contrary to Briggs' assertions, the videos do not unequivocally demonstrate that Briggs did nothing to instigate a fight with Steele.   However, especially without audio, the Court also cannot say as a matter of law whether the February 2015 disciplinary hearing decision was supported by some reliable evidence in the record. Accordingly, neither party has established that it is entitled to summary judgment on this aspect of Briggs' due process claim.

        d.    *Administrative Appeal*

*Wolff* does not identify the right to administrative review of a disciplinary decision as one of the procedural safeguards applicable to pretrial detainees. The due process clause does not guarantee a prisoner the right to appeal from a disciplinary decision. See *Ainsworth v. Terhune*, 2002 WL 1837806 (N.D. Cal. Aug. 8, 2002); *Faurot v. Dillard*, 1995 WL 652477 *2 (N.D. Cal. Oct. 30, 1995). Under certain circumstances, a liberty interest entitled to procedural due process under the Fourteenth Amendment may arise under a state law or regulation. *Faurot*, 1995 WL 652477 *2.

        To support his argument that he had a protected liberty interest in the administrative appeal process, Briggs relies on the principle that pretrial detainees

have a right to procedural due process before they are subjected to more severe conditions of confinement. (Doc. 39 at 19) (citing *Shorter v. Baca*, 895 F.3d 1176, 1190 (9th Cir. 2018)). Briggs also relies on *Mitchell* for the proposition that violation of a jail policy which could have led to a shorter disciplinary sentence constitutes a due process violation. (Doc. 39 at 18-19) (citing *Mitchell*, 75 F.3d at 526). Had he been allowed to appeal in accordance with the procedures set forth in the Inmate Manual, Briggs argues, the duration of his disciplinary sentence might have been reduced.

Although it is not entirely clear, it appears that Briggs may also be asserting he had a state created liberty interest in the administrative appeal process. For example, he cites *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983), which recognized that "a State created a protected liberty by placing substantive limitations on official discretion." (Doc. 39 at 18). Briggs relies on the Inmate Manual, which states that an "inmate may appeal the decision of any disciplinary action by submitting the appeal in writing within 24-hours of the conclusion of the Disciplinary Hearing to the Administrator or designee, who will review the findings for the disciplinary action and render his/her decision." (Doc. 39-23 at 6-7). Briggs argues use of the term "will" establishes a mandatory discretion-limiting standard, pursuant to which the Administrator or designee must review and decide

26

any appeal that is submitted in writing within 24-hours after the disciplinary hearing. Because the fact or duration of his disciplinary sentence might have been affected had he been allowed to appeal, Briggs seems to suggest that the language of the Inmate Manual was sufficient to create a protectable liberty interest.

In response, Defendants do not challenge Briggs' claim that he had a protected liberty interest in administratively appealing the disciplinary decision. (Doc. 49 at 21-22). Rather, they contend there are genuine issues of material fact as to whether Briggs submitted a proper appeal in the first place. After his hearing, Briggs submitted an appeal through inmate kite system, stating that he wanted to "appeal my writeup for fighting, please." (Doc. 39-3 at 8). Administrator Jarrett testified at his deposition that no further action was taken, however, because Briggs' request did not meet the criteria for an appeal. Administrator Jarrett explained there was "no indication of what he was appealing, what his desired outcome was," what exactly "he want[ed] to appeal about it, whether it's the find[ing] of guilt or innocence, the length of sentence, the punishment, anything other than I just want to appeal." (Doc. 39-3 at 8).

Assuming, for present purposes, that Briggs had a protected liberty interest in administratively appealing the disciplinary decision, the Court agrees that summary judgment on this claim is not appropriate because Administrator Jarrett's

27

deposition testimony is sufficient to raise a genuine issue of material fact as to whether Briggs properly appealed in accordance with Detention Center procedures.

**B.      April 2015 Disciplinary Proceedings (Count 3)**

In Count 3, Briggs asserts several due process violations based on his April 2015 disciplinary proceedings.

1.      <u>Disciplinary Hearing Report</u>

Briggs claims the Disciplinary Hearing Report he received after his April 2015 hearing failed to satisfy the minimum due process requirements of *Wolff* for essentially the same reasons he argues the February 2015 Disciplinary Hearing was deficient, namely, that it did not include a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action taken.

Officer Slyngstad was assigned as the hearing officer for Briggs's disciplinary hearing on April 29, 2015. (Doc. 39-5 at 7). The Disciplinary Hearing Report he completed indicated that Briggs "refused to enter plea," was found "guilty," and would be placed in "lockdown for 40 days, no privileges, credit for time served, out date 6/6/15." (Doc. 39-15; Doc. 50-2 at 73). Officer Slyngstad signed and dated the form, but did not provide any other information. (Doc. 39-15; Doc. 50-2 at 73).

Like the February 2015 Disciplinary Hearing Report, the April 2015 Disciplinary Hearing Report does not describe any of the evidence relied on, and does not provide any reasons for the disciplinary action taken. While Officer Slynstad was entitled to draw an adverse inference from Briggs' silence and the fact that he refused to enter a plea, it would have been improper for him to equate that silence with guilt and to find him guilty absent some reliable evidence to support such a finding. See *Baxter v. Palmigiano*, 425 U.S. 308, 320 (1976).

The record contains Lauchner's Disciplinary Offense Report and three Incident Report/Rule Infraction reports regarding the events of April 13-14, 2015 and the incident between Briggs and Smith. ( Doc. 50-2 at 66-68, 70). Although Briggs received copies of these documents before his disciplinary hearing, the Disciplinary Hearing Reports issued after the hearing does not mention them or incorporate them by reference. Other than noting Briggs refused to enter a plea, the report does not state what evidence was relied on in finding him guilty of making a false statement and fighting. Because Briggs did not receive a written statement identifying any of the evidence relied on and the reasons for the disciplinary action taken, he is entitled to summary judgment on this aspect of his procedural due process claim. As with the February 2015 Disciplinary Hearing Report, however,

29

whether this particular due process violation caused Briggs any damages is an issue for the jury.

2.   <u>Disciplinary Hearing</u>

Briggs argues Defendants violated his right to due process during the April 2015 disciplinary proceedings by finding him guilty of fighting and making a false statement based solely on the fact that refused to enter a plea, and without any other supporting evidence.

The Detention Center's inmate manual makes clear that "[a]n inmate **<u>does not</u>** have a right to remain silent at a Disciplinary Hearing, and adverse inference may be drawn from an inmate's silence." (Doc. 39-23 at 6). As stated above, while disciplinary staff may draw an adverse inference from an inmate's silence, a disciplinary decision must still be supported by some evidence. See *Baxter*, 425 U.S. at 320; *Hill,* 427 U.S. at 455-56.

At his deposition, Officer Slynsgtad was asked to identify what evidence supported his finding of guilty. (Doc. 39-5 at 9). He testified that he would have relied on Officer Lauchnor's Disciplinary Offense Report and the surveillance video. (Doc. 39-5 at 8-9). Officer Lauchnor's report describes what is seen on the video, as "Smith set down his meal tray in his cell and charged Briggs, striking him once in the left eye" and "Briggs backed away after being struck and stood with the

dayroom table between himself and Smith until Smith locked down." (Doc. 39-8).
Because this information contradicted Briggs' statement to Detention Center staff
that he had received a black eye while playing basketball, the finding of guilt on
the charge "making false statement" was supported by some evidence in the
record.

The same cannot necessarily be said for the fighting offense. As Briggs
points out, there was nothing in Officer Lauchnor's report or on the video as he
described it, showing that Briggs was the aggressor or instigated the incident with
Smith. In an email exchange on April 29, 2015, Detention Officer Matthew Porter
wrote to Officer Taylor that he was surprised Briggs "got the same time" as Smith
in disciplinary segregation "for getting his ass kicked." In response, Officer Taylor
explained that Briggs had "refused to make a plea so we take it as guilty." (Doc.
39-18). At his deposition, Officer Taylor testified that the decision was based in
part on prior interactions with Briggs and "a totality of all the circumstances" but
was not able to identify any specific interactions or evidence. (Doc. 50-7 at 12).

Although not set forth in his Disciplinary Offense Report, Officer Lauchnor
provided additional information at his deposition. When asked why Briggs would
be disciplined for fighting or physical force, Officer Lauchnor stated he "was
aware of another fight that happened between Briggs and another inmate where he

was actively taunting the other inmate" and based on Briggs' "interactions with officers and other inmates and his history in the detention center," members of the disciplinary team believed Briggs was attempting to control his placement at the Detention Center. (Doc. 50-5 at 7-8).

Based on the evidentiary materials as presented by the parties, the Court cannot say as a matter of law whether the April 2015 disciplinary hearing decision finding him guilty of fighting/physical force was supported by some reliable evidence in the record. Accordingly, neither party has established that it is entitled to summary judgment on this aspect of Briggs' due process claim.

## C.     Administrative Segregation (Count 4)

In Count 4, Briggs alleges Defendants violated his due process rights after the April 2015 disciplinary proceedings by placing him in administrative segregation for punitive reasons without a disciplinary hearing and without any justification for the classification. (Doc. 1 at 25-26).

Following Briggs' appeal from the April 2015 disciplinary decision, Administrator Jarrett amended the "fighting/physical force" charge to "rude and/or disrespectful to inmate," and reduced Briggs' disciplinary lockdown period to 10 days. (Doc. 39-25 at 4; Doc. 50-2 at 74). Briggs submitted an appeal from that determination as well. (Doc. 39-25 at 2-3). On May 18, 2015, Briggs was notified

that his disciplinary sanctions would not be overturned and that, "based upon [his] recent behavior, administrative segregation is the best classification for you at this time." (Doc. 39-25 at 1; Doc. 50-2 at 77). Briggs was held in administration segregation until August 31, 2015. (Doc. 39-29).

Pretrial detainees like Briggs have "a substantive due process right against restrictions that amount to punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). They also "have a right to procedural due process before they are subjected to more severe conditions of confinement than other detainees." *Shorter v. Baca*, 895 F.3d 1176, 1190 (9th Cir. 2018). The Ninth Circuit has held that placement in administrative segregation for non-punitive reasons does not give rise to a liberty interest under the due process clause. *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (quoting *Hewitt*, 459 U.S. at 468).

If a pretrial detainee is placed in "administrative segregation for administrative and security reasons, and not as punishment, he is entitled to procedural due process only if: (1) there is a state statute or regulation that narrowly restricts the power of jail officials to impose administrative segregation and (2) the segregation at issue amounts to 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Monaco v. Moore*, 2012

WL 2872827 *2 (E.D. Cal. July 11, 2012) (quoting *Abenth v. Palmer,* 1999 WL

118003 *2 (N.D. Cal. 1999) (citations omitted)).

Here, Briggs has not shown that these requirements necessary to give rise to

such a state-created liberty interest are met. First, he has not demonstrated that the

procedural requirements set forth in the Detention Center's Policy Manual (39-26

at 7) narrowly restrict the power of Detention Center officials to impose

administrative segregation. See *Abenth*, 1999 WL 118003 *2 (citing *Smith v.

Noonan,* 992 F.2d 987, 989 (9th Cir. 1993) for the proposition that a provision

which merely provides procedural requirements, even if mandatory, cannot provide

the basis for a constitutionally protected liberty interest). Second, Briggs does not

argue or present evidence demonstrating that his administrative segregation

amounted to "atypical and significant hardship … in relation to the ordinary

incidents of prison life." *Abenth*, 1999 WL 118003 *2 (citing *Sandin*, 515 U.S. at

484). To the extent Briggs' claim is premised on an alleged state created liberty

interest, he has not shown that he is entitled to summary judgment.

In moving for summary judgment, Briggs instead argues that the undisputed

evidence demonstrates he was placed in administrative for punitive reasons

without any justification in violation of his constitutionally protected right as a

pretrial detainee to be free from punishment without due process. Briggs

essentially maintains Defendants' punitive intent can be gleaned from the fact that Defendants did not provide him with any reason for placing him in administrative segregation, other than by advising him the decision was "based upon [his] recent behavior." (Doc. 39-25 at 1; Doc. 50-2 at 77).

In response, Defendants argue the evidence of record demonstrates that Briggs placed in administrative segregation for reasons that were not punitive. Citing his altercations with Smith and Steele, as well as the food throwing incident, Defendants argue "Briggs was placed in administrative segregation but not to any unfair extent." (Doc. 49 at 13). Defendants also point to evidence that in the summer of 2015, Briggs continued to violate Detention Center rules including committing the Major Offenses of making a false statement to a detention officer on July 2, 2015. They cite team meeting notes beginning June 1, 2015, which discuss Briggs' placement in administrative segregation and detail the reasons for that continued placement. (Doc. 49 at 13).

Based on the arguments and evidentiary materials of record as presented by the parties, the Court finds that whether Briggs was subjected to administrative segregation for punitive reasons, is a genuine issue of material fact precluding summary judgment in favor of either party on Count IV.

### D.     Failure to Protect (Count 5)

In Count V, Briggs alleges that Defendants failed to protect him from assault by other inmates while he was member of jail population, in violation of his due process rights.

Claims by pretrial detainees alleging "failure to protect" are analyzed under the due process clause of the Fourteenth Amendment, which incorporates the Fourth Amendment. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). To prevail on a failure-to-protect claim against individual officers under the Fourteenth Amendment, a pretrial detainee must present proof of the following elements:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Franklin v. McDonnell*, 2016 WL 11518961 * (C.D. Cal. 2016) (citing *Castro*, 833 F.3d 1060, 1071 (9th Cir. 2016). See also *Belanus v. Dutton*, 2018 WL 2012522 *3 (D. Mont. May 7, 2018). The Ninth Circuit has characterized this test as requiring "more than negligence but less than subjective intent – something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

36

Briggs argues the undisputed facts set forth in his Statement of Undisputed Facts demonstrate that he "was assaulted three times, only to be placed in disciplinary segregation after each assault," and that all of the *Castro* elements are satisfied. Without citing to any specific evidentiary materials, Briggs argues the undisputed evidence as set forth in his Statement of demonstrates that (1) Detention Center staff made an intentional decision to place him in medium or high security general population; (2) placing him with other inmates who had violent tendencies put him at a high risk of suffering serious harm; (3) Detention Center staff were aware that Briggs had been threatened and assaulted by other inmates; and (4) failed to take any measures to protect him. (Doc. 39 at 33).

In response, Defendants argue Briggs "has failed to establish any factual basis to support his contention," and claims it is entitled to judgment as a matter of law because the facts set forth in its Statement of Disputed Facts and Additional Facts (Doc. 48) demonstrate that "each and every placement of Briggs within the Detention Center" was justified. (Doc. 49 at 15). Defendants   also argue Briggs has not come forward with any evidence that Detention Center staff acted with reckless disregard. To the contrary, Defendants take the position that "the evidence which is not in dispute shows very clearly that at all times" Briggs was being protected from other inmates. (Doc. 49 at 15). At a minimum, Defendants argue,

there are genuine issues of material fact precluding summary judgment in Briggs'

favor.

On this point, the Court agrees. As set forth in the parties' respective factual

statements and supporting materials, there are several factual disputes. For

example while Briggs claims Detention Center staff were notified prior to Briggs'

arrival that there had been several threats on his life, Administrator Jarrett testified

that he no information to substantiate such threats. (Doc. 48 at 2). And while

Briggs claims detention officers knew Briggs had been assaulted by another inmate

in July 2014, Administrator Jarrett testified it was thought to be a possible self

injury. (Doc. 48 at 3). Suffice it to say, the Court finds there are triable factual

disputes on a number of issues, including whether (1) the conditions of Briggs'

confinement put him at substantial risk of suffering serious harm; (2) Detention

Center staff failed to take reasonable available measures to abate that risk, even

though a reasonable officer in the circumstances would have appreciated the high

degree of risk involved, and (3) whether by failing to take such measures,

Detention Center staff caused Briggs' injuries.

**IV.**    <u>**Conclusion**</u>

For reasons discussed above,

IT IS ORDERED that Briggs' motion for summary judgment is granted with

respect to his claim that Defendants violated his due process rights because they did not provide him with a written statement of the evidence relied on and reasons for the disciplinary action taken after the February 2015 and April 2015 disciplinary hearings, but DENIED in all other respects.

IT IS FURTHER ORDERED that Defendants' request for summary judgment pursuant to Rule 56(f)(1) is DENIED.

DATED this 20th day of May, 2020.

Kathleen L. DeSoto
United States Magistrate Judge