Benjamin M. Darrow
DARROW LAW, PLLC
415 N. Higgins, Suite 2
PO Box 7238
Missoula, MT 59807
Telephone: (406) 647-0417
Fax: (406) 369-6214
ben@darrowlawmt.com
  *Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| KEVIN BRIGGS,<br><br>   Plaintiff,<br><br>   -vs-<br><br>GALLATIN COUNTY and JOHN DOES 1-8, as individuals and in their official capacity as detention officers,<br><br>   Defendants. | Case No.: 18-0010-BU-KLD<br><br><br>**BRIEF IN SUPPORT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** |

## I.  INTRODUCTION

Plaintiff Kevin Briggs, by and through his Attorney Benjamin M. Darrow, hereby apply to the Court for an award of reasonable attorney's fees, following a jury verdict in their favor against Gallatin County and John Does 1-8, as individuals and in their official capacity as detention officers ("Defendants"). As the prevailing party, Plaintiff is entitled to recover attorneys' fees under 42 U.S.C.

§ 1988.

This case was filed on February 1, 2018 in the United States District Court for the District of Montana, Butte Division. Current counsel for the Plaintiff substituted into the case on November 2, 2020. Counsel also requests the court consider the attorney's fees actually paid by Plaintiff prior to current counsel's representation, in particular because prior counsel won on summary judgment on a number of issues.

The case proceeded to jury trial, where after five days of trial, a jury found that the County had deprived the Plaintiff of his due process rights in February 2015 when it failed to provide a written statement of evidence or reasons for disciplinary action and they jury also found that the County deprived the Plaintiff of his due process rights in April of 2015 by failing to provide written statements or reasons for disciplinary action. As a result of these findings, the jury awarded nominal damages. The court entered a Judgement in accordance with the Special Verdict Form on May 31, 2022.

This case as complex and required review of thousands of pages of discovery, including emails and correctional facility records. The parties took depositions of several individuals. Expert witnesses were used, and a large number of medical records were also reviewed for trial preparation.

As elaborated upon in the accompanying declarations in support, this was an

undesirable case with a high contingency risk. It required extraordinary amount of time and skill on the part of plaintiff's counsel to achieve a successful result. As a result of this judgment, the County will have to – or at least should – improve its training for correctional officers and how they discipline pretrial detainees.

For the reasons stated below, the court should award Plaintiff their requested fees, and retain jurisdiction to order supplemental compensation for future work required to defend this judgement on appeal and/or as incurred if Plaintiff's own appeal is successful.

## II.   LEGAL STANDARD

42 U.S.C. § 1988 provides from an award of attorney's fees and costs to the prevailing parties in § 1983 actions. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Fee awards have proved "an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id*. at 577-578. "When a plaintiff succeeds in remedying a civil rights violation, …he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 831 (2014), quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (*per curiam*). The purpose of section 1988 is to provide a fully

compensatory fee and enable plaintiffs injured by unconstitutional government action to find competent counsel that they would not otherwise be able to afford.

The determination of the amount of a reasonable fee award begins with calculation of the *lodestar* – the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. See *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). The lodestar figure is a "presumptively reasonable fee" under § 1988. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

Plaintiff requests the amounts set forth in the lodestar calculation below as reasonable attorney's fees for the work done in obtaining the jury verdict in their favor. The amounts requested are based on the reasonable hours expended, supported by the time records of Plaintiff's attorney and his respective staff as set forth in the supporting Declarations, multiplied by their reasonable hourly rates.

## III. PLAINTIFF IS ENTITLED TO THE FULL AMOUNT OF LODESTAR FEES DESPITE NOMINAL DAMAGES VERDICT

Plaintiff won an enforceable judgment against the Defendants, which indisputable renders them the prevailing party for purposes of a § 1988 fee award. *Farrar v. Hobby*, 506 U.S. 103, 121 (1992). Plaintiff anticipates the defendants will argue that a nominal damage judgement disentitles them to reasonable attorney's fees calculated by lodestar.

However, such an argument would fail. "[T]he dollar amount lawyers recover for their clients is not the sole measure of the results the prevailing parties' attorneys obtained." *Gonzalez v. City of Maywood*, 729 F.3d at 1209-10. "Attorneys who win a civil rights claim not only benefit their client in terms of the amount of money the recover, they also confer benefits on others throughout society by, for example, ending institutional civil rights abuses or clarifying standards of constitutional conduct." *Id*.

In considering a fee request in a case where nominal damages were awarded, the court must consider "the difference between the amount recovered and the damages sought," but also "the significance of the legal issue on which the plaintiff claims to have prevailed" and whether the plaintiff "accomplished some public goal." *Farrar v. Hobby*, 506 U.S. 103, 121 (1992) (O'Connor concurring). "Where the district court properly has weighed the foregoing factors, the resulting award is not an abuse of its discretion." *Cummings v. Connell*, 402 F.3d 936, 947 (9th Cir. 2005).

Although Plaintiff did seek monetary recovery for the violations of his rights, the primary goal of this litigation, and indeed of civil rights litigation generally, has been to change the Defendants' policies and training to prevent future harm to people like Briggs. To that end, there was no significant difference between the amount recovered and the damages sought. Plaintiff pleaded only for

an award of damages according to proof at trial. The Court should not look solely at the dollar amount when deciding whether to award fees. "Even in cases seeking only monetary relief, 'a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damage awards.' Therefore, it is inappropriate for a district court to reduce a fee award below the lodestar simply because the damages obtained are small." *Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988, quoting *City of Riverside v. Rivera*, 477 U.S. at 574. It is not unusual for the award of attorney's fees to exceed the amount of damages recovered. *Yang v. City of Chicago*, 29 F.Supp.2d 480, 483 (N.D. Ill. 1998); citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986).

Given that the rights of pretrial detainees to be free from oppressive punishment is recognized as a fundamental right in our society, ensuring that the government officials tasked with refraining from punishing pretrial detainees are trained properly of pretrial detainee rights is of the utmost importance.

In many instances, the 9th Circuit has concluded that such nominal damage jury verdicts against municipalities for unconstitutional policies and practices are beneficial to the public for their deterring effect and likelihood of promoting positive change. See e.g., *Wilcox v. City of Reno*, 42 F.3d 550 (9th Cir. 1994) (finding that nominal damage judgement against City for unconstitutional use of force policy that caused injury to plaintiff was beneficial to police department and

community at large); *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) at 364 ("[T]he verdict established a deterrent to…others who establish and implement official polices governing arrests of citizens. Thus, it served the public purpose of helping to protect Morales and persons like him from being subjected to similar unlawful treatment in the future."); *Mahach-Watkins v. Depee*, 593 F.3d 1054 (9th Cir. 2010) (nominal damage verdict achieved tangible results for public benefit in that verdict would deter defendant form engaging in future unconstitutional conduct, even with CHP's insistence it would not change its policies or practices).

Given the significance of the legal issues in this case and the public benefit achieved in obtaining a judgement against the Defendants and deterring future violations of the constitutional rights of pretrial detainees, the Court should properly award lodestar fees as set forth below.

## IV.    THE LODESTAR CALCULATION

The *lodestar* calculation is based on the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate for each attorney or support staff personnel for whom compensation is sought. *Morales v. City of San Rafael*, *supra*, at 363. This is the starting point for any fee award. There is a strong presumption, however, that the lodestar calculation represents a reasonable fee. *Id*. and n.8. The reasonable hourly rate is calculated by reference to "rates and practices prevailing in the relevant market." *Missouri v. Jenki*ns, 491 U.S. 274, 286

(1989).

The reasonableness of the attorney's fees must be determined "in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a 'reasonable' attorney's fee under § 1988 means a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 591 (1986).

With respect to the number of hours billed, "the Court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014).

Evidence showing the number of hours devoted to this cause by the attorney is in the declaration. Plaintiff has included the billing statement of Mr. Biddulph but has not obtained a declaration from him.  His billed amounts are detailed in the Declaration of Benjamin M. Darrow.

Here, the total lodestar figure requested is $50,278.16. This sum is derived by reference to the prevailing rates in the relevant market for similar services in the context of a civil rights jury trial seeking to vindicate the constitutional rights to familial association.

Set forth in the table below is a summary of the complied and tabulated billings of the attorney and paralegals who worked on this case, and their

corresponding lodestar fees:

| Attorney/Paralegal | Reasonable Hourly Rate | Hours Billed | Lodestar Fee |
|---|---|---|---|
| Benjamin Darrow | $225/hour | 176:48 hours | $39,262.50 |
| Amanda Darrow | $95/hour | 86:42 hours | $8236.50 |
| Sarah Brennan | $35/hour | 79:30 hours | $2,779.16 |
| **Total** | | | **$50,278.16** |

Mr. Biddulph had attorney's fees of $66,162.21, billing at $100/hour that were actually paid by Mr. Briggs but are not included in the above lodestar amount.

## A.    The Number of Hours Was Reasonable and Necessary

Hours are reasonable if, in light of the circumstances, the time could have been billed to a private client. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The Court should deem the hours reasonable if, "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir.1982). Work is not unreasonable merely because it is time-consuming or duplicative; rather, there must be a specific reason that it was unnecessary or excessive. *See, e.g., Moreno v. City of Sacramento, supra*, (distinguishing work that is "an inherent part" of litigation from "unnecessarily duplicative work"; reversing trial court's significant percentage reductions for fee award that seemed "too high").

Plaintiff's attorneys and staff took all measures to avoid overstaffing and double-billing. Due to the small size of Plaintiff's attorneys' office, the undersigned lead counsel Benjamin M. Darrow performed all of the necessary attorney work and assigned as much support work to his paralegal and law clerk as possible. See Declaration of Benjamin M. Darrow.

In *Moreno*, the 9th Circuit explained certain factors upon which district courts may not rely in modifying fee awards. First, although courts may reduce awards based on unnecessary duplication of efforts, they must take into account circumstances under which duplicative work is necessary. *Id*. at 1112.

Second, courts may not "set the fee based on speculation as to how other firms would have staffed the case," or substitute their own judgement as to staffing decisions on a particular case. *Id*. at 1114-1115. The court noted the difficulties of comparing staffing decisions of small or solo civil rights firms to that of large commercial litigation firms in light of the vast differences between the two models. *Id*. at 1115. The court explained that such a comparison may not serve the "statutory goal of sufficiently compensating counsel in order to attract qualified attorneys to do civil rights work." *Id*. at 1115. Finally, the Court should not engage in "double counting," by reducing both the hourly rate and the total number of hours. *Ibid*. Should the County in fact claim there was any overstaffing, or the hours unreasonable,

The amount of time Plaintiff's attorney spent in litigating this case is also attributable in large part to the strong opposition by Defendants to all of Plaintiff's claims, driving the case all the way to jury trial and beyond. All of the hours expended by Plaintiff's counsel and staff were necessary to combat the resistance by Defendants. "[Defendants] could have avoided liability for the of the attorney's fees for which they now find themselves liable by making a reasonable settlement offer in a timely manner. ... 'The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *City of Riverside v. Rivera*, 477 U.S. at 580 (citations omitted).

i.   <u>Plaintiff's Attorney Is Entitled to Compensation for All Requested Hours Expended on the Litigation Against the County and its Employees</u>

In a lawsuit where the plaintiff presents different claims for relief that "involve a common core of facts" or are based on "related legal theories," the district court should not attempt to divide the request for attorneys' fees on a claim-by-claim basis. Instead, the court must proceed to the second part of the analysis, and "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2008).

In complex litigation like the present case, issues are often overlapping and intertwined. In order to represent their clients adequately, attorneys must explore

fully every aspect of the case, develop all of the evidence, and present it to the court. The reasonably prudent lawyer virtually leaves no stone unturned for it is the stone unturned under which a defense torpedo may lie.

The mere fact that the litigant did not succeed in obtaining a judgment on all of the claims asserted does not mean that time spent pursuing these claims should automatically be disallowed. *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D. Cal. 1974). The court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case. *Jones v. Diamond*, 636 F.2d 1364, 1382 (9th Cir. 1981); *Gurule v. Wilson*, 635 F.2d 782, 788 (9th Cir. 1980); *Lamphere v. Brown Univ.*, 610 F.2d 46 (9th Cir. 1979); *Hensley v. Eckerhart*, *supra*. A plaintiff who ultimately succeeds on a particular claim is entitled to all attorney's fees reasonably expended in pursuing that claim, even if he or she suffered some adverse rulings along the way. *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

## B.   The Proposed Hourly Rates Are Appropriate

Plaintiffs are requesting that their attorneys and staff be compensated at the hourly rates set out in the chart above.  Under 42 U.S.C. §1988, reasonable rates are to be calculated according to the prevailing market rates in the relevant legal community performed by attorneys of comparable skill, experience and reputation.

*Blum v. Stenson*, 465 U.S. 886 (1984) at 893, 895, n. 11. "Such rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992). "When attorney's fees are awarded, the current market rate must be used. The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni v. State of New Jersey*, 259 F.3d 146, 149-150 (3rd Cir. 2001).

Given the complexity and difficulty of prosecuting civil rights actions involving the civil rights of pretrial detainees, it takes exceptional skill, expertise and persistence to succeed. Because of this, only a small number of attorneys in the State of Montana will even agree to accept these cases.

Under these circumstances, Plaintiff's attorney is entitled to compensation at the highest hourly rate "for similar services of lawyers of reasonably comparable skill, experience and reputation." *D'Emanuele v. Montgomery Ward*, 904 F.2d 1379, 1384 (9th Cir. 1990).

In support of their requested hourly rates Plaintiff is producing two sets of declarations and evidentiary support. First, he has provided declarations establishing the backgrounds, reputations, and experience of Plaintiff's counsel and his paralegals, as well as the declaration of another civil rights attorney in the State

of Montana area with comparable skill, experience, and reputation.   The declarations and accompanying evidence support the hourly rates requested by Plaintiffs.

The hourly rate is also merited due to the result achieved in this case. Attorneys who "win a civil rights claim" not only benefit their client in terms of the amount of money they recover, "they also confer benefits on others throughout society" by, for example, ending institutional civil rights abuses or clarifying standards of constitutional conduct. *Gonzalez v. City of Maywood*, *supra*, at 1210. Where a civil rights case confers such non-monetary benefits, "it would be wrong to evaluate the extent of the results Plaintiffs' counsel obtained based solely on the number of dollars they recovered for their clients." *Ibid*.

Plaintiffs submit that the lodestar requested is reasonable and meritorious in recognition of the tremendous benefit conferred on future pretrial detainees held in Gallatin County Detention Facility.

## V.    CONCLUSION

For the above reasons, this motion should be granted and attorney's fees (a reasonable lodestar figure) in the amount of $50,278.16 should be granted. The hours expended by Plaintiff's counsel were reasonable and necessary given the challenges faced in this action, and the requested hourly rates are appropriate. The "lodestar" is therefore reasonable and should be awarded.

DATED this <u>29 </u>day of <u>June,</u> 2022.

        DARROW LAW, PLLC

        By <u>/s/Benjamin M. Darrow</u>
              Benjamin M. Darrow
              *Attorney for Plaintiff Briggs*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief in Support of Motion for Attorney's Fees is in compliance with Local Rules.  The brief's line spacing is double spaced, and is proportionately spaced, with a 14 point font size and contains less than 3,250 words. (Total number of words: 3,215, excluding certificates).

Dated this 29th day of June, 2022.

DARROW LAW, PLLC

By _/s/Benjamin M. Darrow_____
       Benjamin M. Darrow
       *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on 29 day of June, 2022 a copy of the foregoing document

was served via court CM/ECF and mailed to the following persons:

        Calvin J. Stacey
        Morgan M. Sorena
        Stacey & Funyak
        PO Box 1139
        Billings, MT 59103
        406-259-4545
        cstacey@staceyfunyak.com
        msorena@staceyfunyak.com


        By  /s/Benjamin M. Darrow_____
            Benjamin M. Darrow
            Attorney for Plaintiff